2008 OK CIV APP 64

**OLTMAN HOMES, INC., an Oklahoma Corporation, Plaintiff/Appellee,**

v.

**Christopher J. MIRKES and Jenifer Mirkes, Husband and Wife, Defendants/Appellants.**

**No. 104,197.**

Court of Civil Appeals of Oklahoma, Division No. 2.

May 23, 2008.

Howard D. Perkins, Jr., Howard D. Perkins & Associates, P.C., Broken Arrow, OK, for Plaintiff/Appellee.

Lawrence D. Taylor, Tulsa, OK, for Defendants/Appellants.

JERRY L. GOODMAN, Presiding Judge.

¶1 Buyers, Christopher J. and Jenifer Mirkes, appeal the trial court's December 14, 2006, order denying their motion for a new trial or a judgment notwithstanding the verdict and its January 16, 2007, order providing for costs and an attorney's fee. Builder, Oltman Homes, Inc., sued Buyers for their breach of a contract for the sale of real property. Following a jury verdict in Builder's favor, the trial court denied Buyer's motion for a new trial and granted Builder's motion for costs and an attorney's fee. Buyers appeal.

## FACTS

¶2 According to Builder's December 8, 2005, petition, the parties entered into a written contract on September 30, 2005, in which Builder agreed to sell Buyers a new residential property, for the contract price of $180,400.00. Buyers subsequently requested Builder perform construction changes and custom work. The parties agreed those extra costs would be paid at closing. Buyers then breached the contract by refusing to close on the property, requiring Builder to obtain another buyer, which it did, 26 days later. Builder was able to sell the property for $179,400.00, exactly $1,000.00 less than the original contract price. After mediation failed, Builder sued Buyers for the costs of the construction changes which it was unable to recoup from the later sale of the property. Builder sought $4,730.50, "representing the costs associated with the special upgrades and change orders demanded by the defendant" plus costs and an attorney's fee.

¶3 On January 20, 2006, Buyers filed the following offer of judgment:

[ ] Defendants ... hereby offer judgment to the Plaintiff in the amount of $250.00. This offer is pursuant to 12 O.S. § 1101.1 and does not include attorney's fees or costs.

Builder did not accept or reject the offer and made no counteroffer. Buyers' 12 O.S.2001 and Supp.2002, § 1101.1 offer was deemed rejected pursuant to 12 O.S.2001 and Supp. 2002, § 1101.1(B)(1)(b).

¶4 Buyers also filed an answer, denying Builder's allegations. Buyers allege the contract terminated on its own terms, or alternatively, Builder breached the contract.

¶5 Following a pretrial conference and the exchange of proposed jury instructions, a jury was impaneled on October 9, 2006, before which the parties presented their evidence. Buyers demurred to Builder's evidence and later sought a directed verdict in their favor, both of which were denied by the trial court. The jury returned a verdict for $4,435.77 in Builder's favor.[1] Builder later

---

1. We are unable to determine the items of damages resulting in this sum.

sought an attorney's fee and costs. The trial court awarded Builder $903.00 in costs and $6,182.75 as an attorney's fee, which Buyers appealed after the trial court denied their motion for a new trial.

### STANDARD OF REVIEW

¶ 6 Whether a party is entitled to a statutory attorney's fee is a legal question, and will be reviewed *de novo* by this Court. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. Once the legal right to a fee is established, the amount awarded, if any, is discretionary with the trial court. The standard of review then becomes whether the trial court made a clearly erroneous conclusion and judgment, against reason and evidence and thus abused its discretion in granting the attorney's fee award. *Broadwater v. Courtney*, 1991 OK 39, ¶ 7, 809 P.2d 1310, 1312.

¶ 7 Further,

The appellate court gives great deference to the jury's fact-finding. As stated in *Eversole v. Oklahoma Hospital Founders Association*, 1991 OK 80, 818 P.2d 456, 459:

"A jury verdict and judgment will not be reversed for error, if there is substantial evidence to support the verdict on any theory of law. *Winslow v. Watts*, 446 P.2d 598, 599 (Okla.1968). The verdict of a jury is conclusive as to all disputed facts and all conflicting statements. *Walker v. St. Louis–San Francisco Ry. Co.*, 646 P.2d 593, 597 (Okla.1982). And, where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the verdict and judgment based thereon." *Walker*, 646 P.2d at 597.

*In re K.L.C.*, 2000 OK CIV APP 98, ¶ 17, 12 P.3d 478, 482.

### ANALYSIS

¶ 8 A breach of contract suit requires three elements be proven: formation of a contract; a breach of that contract; and actual damages suffered from that breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834,

843. The parties agree a contract existed, and there is sufficient evidence to support a conclusion that a breach occurred. The items of damage and the amount of damages constitute the third element necessary to be proven and are the subjects of Buyers' first issue on appeal.

#### A. *Measure of Damages*

¶ 9 Before proceeding with our analysis, it is necessary to define the proper measure of damages. We begin by noting that, in general, damages for breach of contract are found in 23 O.S.2001, § 21:

For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.

¶ 10 Because contracts to sell real property often contain readily ascertainable values, the measure of damages for breach of these types of contract is governed by 23 O.S.2001, § 28:

The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract, over the value of the property to him.

¶ 11 As we held in *Reid v. Auxier*, 1984 OK CIV APP 33, ¶ 16, 690 P.2d 1057, 1061:

This language has been construed to mean "the difference between the actual contract price and the actual value of the land at the time of the breach." *Harman v. Franks*, 178 Okl. 560, 565, 63 P.2d 54, 59 (1936).

¶ 12 We note the measure of damages set out in § 28 is limiting. It is the remainder of an arithmetical subtraction operation. However, because of changes in land values and because the failure to timely close on a contract for the sale of real property may result in damages other than the difference be-

tween the contract price and the actual value of the land, a breach of a contract for the purchase of real property may result in damages that will not: "compensate the party aggrieved for all the detriment proximately caused thereby" because those damages may "not [be] clearly ascertainable in both their nature and origin." 23 O.S.2001, § 21. Such damages are often difficult to prove. In an effort to address this difficulty, contracting parties include in the contract a provision establishing fixed or liquidated damages in the event of a breach.

¶ 13 In general, fixed or liquidated damages clauses are prohibited by 15 O.S.2001, § 214:

Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by Section 215 of this title.

¶ 14 As noted, an exception exists. Title 15 O.S.2001, § 215(A) permits:

A stipulation or condition in a contract except a contract to purchase and sell real property, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

¶ 15 Thus, a contract containing a fixed-damages clause is valid if it can be shown that "it would be impracticable or extremely difficult to fix the actual damage" caused by a breach. All contracts are governed by § 215(A) except contracts to purchase and sell real property. Those are governed by § 215(B).

B. A provision in a real estate sales contract, providing for the payment of an amount which shall be presumed to be the amount of damages sustained by a breach of such contract, shall be held valid and not a penalty, when such amount does not exceed five percent (5%) of the purchase price. In the event such amount exceeds five percent (5%) of the purchase price, such provision shall be held invalid and a penalty unless the party seeking to uphold

the provision establishes that such amount is reasonable. If such provision is valid under this subsection, the limitations of Section 28 of Title 23 of the Oklahoma Statutes do not apply.

¶ 16 Thus, in a contract for sale of real property, a provision fixing damages is valid if the fixed damages do not exceed five percent (5%) of the purchase price. Further, damages measured by § 215(B) are not limited by § 28, which restricts damages to those equal to "the amount which would have been due to the seller under the contract, over the value of the property." 23 O.S.2001, § 28. Even if the amount of liquidated damages exceeds the difference between the contract price and the value of the property sold, such damages are valid so long as they do not exceed five percent (5%) of the purchase price. 15 O.S.2001, § 215(B).

¶ 17 Such a provision is included in the real estate contract executed by the parties in this suit. That provision states:

15. **Breach or Failure to Close.** If, after the Seller has performed Seller's obligations under this Contract, and if, within five (5) days after the date specified for Closing under Paragraph 12, the Buyer fails to make payments or to perform any other obligations of the Buyer under this Contract, then the Seller may, at Seller's option, cancel and terminate this Contract and retain all sums paid by the Buyer, but not to exceed 5% of the purchase price, as liquidated damages, or pursue any other legal or equitable remedy for the breach of this Contract by the Buyer....

¶ 18 This contract provision complies with 15 O.S.2001, § 215(B). We note this provision gives Builder an option to "retain all sums paid by the Buyer, but not to exceed 5% of the purchase price, as liquidated damages" or, at Builder's option, it may "pursue any other legal or equitable remedy for the breach of this Contract...."

¶ 19 To summarize, upon the breach of the contract, Builder could seek damages under two mutually exclusive measures. It could claim the liquidated damages specified in the contract pursuant to 15 O.S.2001, § 215(B) and Paragraph 15 of the contract and retain

the earnest money already paid by Buyers. Alternatively, it could choose to forego the liquidated damages provided by the contract and seek "any other legal or equitable remedy." This remedy is measured by either 23 O.S.2001, § 21 ("the amount which will compensate the party aggrieved for all the detriment proximately caused thereby") or by 23 O.S.2001, § 28 ("the excess, if any, of the amount which would have been due to the seller under the contract, over the value of the property to him").

### B. *Jury Instructions*

¶ 20 The jury was instructed as follows:

The damages caused by the breach of contract to purchase real property, is deemed to be the excess, if any, of the amount which would have been due the seller under the contract, over the market value of the property.

¶ 21 This is the measure of damages set out in 23 O.S.2001, § 28. Neither of the parties argue on appeal this instruction is incorrect. Both agree that since Builder returned the earnest money paid by Buyers, it has waived its right to claim damages pursuant to 15 O.S.2001, § 215(B) and Paragraph 15 of the contract. It is now Builder's burden to show it is entitled to damages under 23 O.S.2001, § 28.

¶ 22 Though Buyers do not contest the § 28 measure of damages, they ask two questions: What was the actual contract price? What is the actual value of the property at the time of the breach? They argue that Builder has failed to prove both elements of that measure and the trial court erred when it submitted the issue to the jury.

### C. *Buyers' Arguments*

¶ 23 Buyers, in a series of arguments, question both the actual contract price and the actual value of the property, thus calling into question the elements of the measure of damages under § 28.

¶ 24 The record shows Builder made a preconstruction estimate of the value of the property for purposes of securing bank financing. That preconstruction estimate was $184,000.00. Buyers argue:

The only evidence regarding the market value at the time of the alleged breach in the Plaintiff's case in chief was the existence of a preconstruction appraisal of $184,000.00. Adding all the extras to the contract price, the appraised value was about $2,000.00 more than the contract price at the time of the alleged breach in which case the actual damages would be zero.[2]

Buyers thus argue Builder's damages are calculated as follows: $184,000.00 (market value based on preconstruction estimate) minus $182,000.00 (Buyers' contract price of $180,400 plus "all the extras") equals (they argue) "about $2,000.00." Buyers conclude that, because the market value exceeds the contract price, Builder lost no money on the contract because of Buyers' breach. For the reasons set out below, we reject this argument.

¶ 25 Buyers' argument continues:

At the conclusion of the Plaintiff's case in chief, counsel for the Mirkes demurred to the evidence because there was a complete absence of any evidence of the market value of the property at the time of the alleged breach and therefore the Plaintiff failed to make a *prima facia* [*sic*] case for a breach of contract for the purchase of real property action and the demurrer should have to be [*sic*] sustained because it would be impossible for the jury to deliberate on the damages without having some evidence that the market value of the property at the time of the alleged breach exceeded the contract price.[3]

Now Buyers contend there is no evidence of the market value. Thus, Builder's damages would be: Zero (market value) minus $180,400.00 equals (minus $180,400.00) in damages, or zero damages. Again, we reject this argument.

¶ 26 Buyers make another argument:

The measure of damages in the case at bar would therefore be the difference between the contract price of $181,600.00 [*sic*] and

2. Appellants' Brief in Chief, p. 5.

3. *Id.*, p. 7.

the market value of the property established by the expert testimony of an appraiser. No expert appraiser testified and no evidence of market value was offered whatsoever. The difference between the preconstruction appraisal and the contract price was admitted by Oltman in his testimony to be zero.[4]

This time, Buyers argue the damages are: $181,600 [sic] (contract price) minus zero (market value); meaning no damages can be awarded because they cannot be proven. Finally, Buyers argue:

At the close of Appellee's case in chief, there was absolutely no evidence whatsoever of the market value of the property other than a preconstruction appraisal that exceeded the contract price and the demurrer to the evidence should have been sustained. Likewise, at the close of all the evidence, there was absolutely no evidence whatsoever of the market value of the property at the time of the alleged breach and the motion for directed verdict should have been sustained.[5]

¶ 27 In short, according to Buyers' various arguments, there is no possible way to measure damages under any formula using the market value of the house, the preconstruction estimate, or the contract price.

¶ 28 We reject Buyers' arguments. Our analysis begins with a review of the jury instructions:

The damages caused by the breach of contract to purchase real property, is deemed to be the excess, if any, of the amount which would have been due the seller under the contract, over the market value of the property.

¶ 29 Restated, Builder's damages equal the contract price minus the market value of the property.

### D. *Market Value of House*

■ ¶ 30 In the case of *Jordan v. Peek,* 1954 OK 18, 268 P.2d 242, the Oklahoma Supreme Court stated:

In *City of Tulsa v. Creekmore,* 167 Okl. 298, 29 P.2d 101, we defined fair market value as follows:

"By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied."

*Id.,* at ¶ 8, 268 P.2d at 244.

■ ¶ 31 We hold the market value of the property in this case was established when Builder sold the property to the second buyer for $179,400.00. This sale occurred 26 days after the date on which Buyers originally agreed to close. The sale is the best evidence of the market value of the property. It was sufficiently close in time to the original closing date to be relevant; no major economic changes were shown to have occurred in the market between the date of Buyers' anticipated closing and the second, actual closing. We reject Buyers' argument that the market value could only be the preconstruction estimate made to secure bank financing, or that Builder was required to produce an expert appraisal to prove market value. Builder, as the owner, is competent to testify what, in its opinion, is the fair market value of the property; however, its opinion is not conclusive. *Poteete v. MFA Mutual Ins. Co.,* 1974 OK 110, ¶ 18, 527 P.2d 18, 21. In addition to Builder's opinion of the market value, the jury was presented with the price the subsequent buyer paid for the property. This price was the best evidence of the fair market value of the property. The jury was thus presented with one of the two amounts necessary to compute damages under these instructions. We now examine the second amount required to calculate damages.

### E. *Amount Due Builder under the Contract*

■ ¶ 32 We hold, as set out in detail below, the amount expected by Builder under

---

4. *Id.,* p. 11. Further, Buyers' brief claims the contract amount is $181,600.00. What is the basis for the $181,600.00 number? We simply cannot find the origin of this number in the record. The contract clearly states the agreed price to be $180,400.00.

5. Appellants' brief in chief, P. 16.

the first contract was $181,852.91. Our review of the record reveals the following evidence and testimony established the sum due Builder under the contract at the time of the anticipated closing, the date Buyers breached the contract.

¶ 33 Both parties agree Buyers executed a contract for the sale of the real property wherein they agreed to purchase the house for $180,400.00. Buyers testified further:

Q. Do you believe the price for which you were going to purchase this house from Mr. Oltman, $180,400, was a reasonable and fair market value, sir?

A. We signed the paperwork, yes.

. . .

Q. Now, after you signed the—when you signed the contract, you agreed to pay certain extra money in *addition to the original sales price.* Is that a fair statement?

A. Over and above what he had already budgeted for the home.

. . .

Q. Right. And there was an agreement, with certain upgrades, to $180,400 as the final price. Is that correct?

A. That was—that was the final agreed-to price, yes.

Q. Okay. Now, in addition to that, based upon the supplemental list . . . did you not agree to pay extra if you ran over your allowance for certain things like carpet and fixtures and things of that nature?

A. Let's see. Looks like we were going to pay additional over the lighting fixtures and also the carpet.

Q. Anything else? Sinks? Mirrors?

A. It did say in here sinks, toilet, faucets, mirrors.

Q. Now, do you know whether you went over the allowance given in the contract for those items?

A. I do know that we went over on the lighting and on the carpet.

. . .

Q. Did Mr. Oltman demand any earnest money or deposits up front for those items that went over the allowance?

A. No. We did offer, but no.

Q. *That was going to be settled up on at closing?*

A. *That is correct.*

Q. To date, have you paid Mr. Oltman anything for any of those custom items that went over your budget?

A. We have not, no.

Q. Have you paid Mr. Oltman anything for the modifications he did to the house which are unique to your and your wife's specific request?

A. No.

(Emphasis added.)

¶ 34 Builder's testimony was similar: the costs of additions to the house which exceeded the allowances provided in the contract would be paid by Buyers at closing as part of the final purchase price.

¶ 35 We hold the evidence clearly establishes the amount due Builder under the contract at the time of its breach (the date of the anticipated closing) to be: the contract price of $180,400.00, plus $628.08 for light fixture costs exceeding the allowance, plus $554.83 for carpet costs exceeding the allowance, plus $45.00 in labor for cabinet modifications for the oversize washer, plus $225.00 for rerouting a kitchen gas line to accommodate a custom stove. The sum of these is $181,852.91. Builder testified that the foregoing numbers were correct. However, this is not the amount sought by Builder. That number was higher, and as seen, incorrect.[6]

6. The totals testified to by Builder and given the jury by the trial court are simply wrong. That portion of the testimony proving damages is set out as follows:

Q. Now, *in addition to the $1,000* you lost on the transaction off the top, did you have other damages that you suffered as a result of this transaction?

A. Yes.

Q. And can you articulate specifically what those damages are?

. . .

A. Yes, I can. Their allowance on the lights were $1100; they went over by $628.08. The allowance on the carpet was $15 per yard; they went over by $554.83. Because of the special oversize fridge that they picked out, I had to rework the cabinet to get it to fit. I did that myself and I charged one hour of labor,

### F. *Post-breach Costs Not Recoverable as Instructed*

 ¶ 36 Neither the prorated 26 days' cost of interest and electricity nor the $200.00 in appliance sales tax paid by the Realtors to Builder to keep the contract intact are elements of damage. Those costs were incurred after the breach, and would not have been incurred had the contract been completed. Had the contract closed as planned, Builder would not have incurred, much less expected, those costs to be repaid by Buyers. Therefore, they are not part of the amount Builder expected from the sale.

¶ 37 Further, those costs cannot be separately recovered as part of the fair market value of the home. Builder, having incurred those costs in the 26 days between the first expected closing and the second actual closing, presumably included them in the price for which he was willing to sell the property to the second buyers. Builder was presumed to know what its actual costs were which, with its profit added, was the price for which it was willing to sell the property.

¶ 38 For the same reason, Builder is not permitted to include as a separate element the $1,000.00 difference in the purchase price between the two contracts. The jury instruction did not define damages as the price difference between the two contracts; rather, it was instructed to award damages for the difference between the sum expected under the first contract and the market value of the property. The $1,000.00 purchase price difference is presumably factored into the market value of the property as explained above. Under the instructions given, the only way to recoup that difference was to increase the market value of the house by $1,000.00. Because Builder agreed to sell the property for less, thus reducing the fair market value of the property by that amount, it cannot now recover that difference under these instructions. The $1,000.00 was already included in the amount expected by Builder under the breached contract. To once again add the $1,000.00 to the jury's list of the possible elements of damage would be to award that figure twice: once as part of the value of the breached contract, and again as the difference between the value of the breached contract and the fair market value of the property.

¶ 39 To summarize, under the jury instructions given, the jury cannot consider the following costs as part of its 23 O.S.2001, § 28 calculation: costs for electricity, interest, appliance sales tax, and $1,000.00 difference between contracts (post-breach costs). Those post-breach costs are not costs "which would have been due the seller under the

$45. Because the gas range ... was blocked on one side of it, so I had to have a licensed plumber come in and rework the gas line and he invoiced me 225.... The Realtors were going to try to keep the deal together, were going to pay the taxes on the appliances, $100 per, so I lost $200 there.... And then the property was off the market for a number of days.... I have redone and counted the invoice or the interest that I had to pay and electricity to heat the home from the time of closing, which was November 11th until I closed with the [second buyers] on December 7th.
Q. Have you prorated out your expenses ... for that?
A. Yes.... So the property was off ... the market for 26 days. And so that was $737.88 in interest that I had to pay to the bank. And then my electric bill for 26 days came out to $44.98.
...
Q. What is your total of those *overages* that you've just given us?
...
A. *3,435.77.*

...
Q. And that's *in addition to the $1,000* you lost on a reduced sales price, in addition to that?
A. Yes.
Q. If my math is correct, you're telling me your damages on this case were *$4,435.7 7.* Is that correct, sir?
A. That is correct.
The total of all specific damages testified to by Builder over and above the $1,000.00 contract difference totals $2,435.77, not $3,435.77. To this, Builder (and the trial court) added the $1,000.00 loss, for a total prayer of $4,435.77, which was the amount awarded by the jury. As seen, however, the numbers simply do not add up. The transcript suggests that Builder inadvertently added the $1,000.00 it lost on the contract price to the specific damages, and then added that same $1,000.00 again to that total, for the total claimed damages of $4,435.77. This was the amount the trial court instructed the jury and was the amount of damages awarded by the jury. Clearly, the jury awarded more than the evidence supports.

contract" (because they had not been incurred on the date of the anticipated closing) and they are not part of the "the market value of the property" at the time of the second closing (because they were presumably included in the second contract price). The jury was not instructed to award any damages arising from the breach that were unrelated to either the contract price or the market value of the property. Had the jury been instructed differently, it might have been possible for it to consider those post-breach costs. However, neither party has raised any issue regarding such an instruction. We conclude those post-breach costs are not recoverable.

¶ 40 Builder's argument that the extra construction costs necessitated by the Buyers' requested changes were made part of a separate contract or agreement, due whether closing occurred or not, is rejected. The evidence is clear that both parties expected the costs of the custom modifications to be included in the final purchase price Buyers paid at closing. Further, there is no written or oral agreement showing additional construction costs were to be collected separately, after Buyers' closing. Builder has failed to prove that the additional construction costs he now seeks to separately collect were not part of the final purchase price due at Buyers' closing.

¶ 41 The measure of damages under 23 O.S.2001, § 28 due Builder as a result of Buyers' breach of contract are set out in the following annotated instruction: "The damages caused by the breach of contract to purchase real property, is deemed to be the excess, if any, of the amount which would have been due [Builder] under the contract [$181,852.91], over the market value of the property [$179,400.00, the amount of the second contract]." That excess is $2,452.91. The trial court, though it properly instructed the jury regarding the measure of damages, improperly instructed it regarding the actual damages which it could consider. The trial court's erroneous instruction regarding the actual amount of damages permitted the jury to render a verdict in excess of the amounts proven from the evidence. Accordingly, its October 27, 2006, journal entry of judgment

was incorrect. The trial court should have granted Buyers' motion for either a new trial or for judgment notwithstanding the verdict in order to replace the erroneous amount with the correct amount as we have previously computed.

¶ 42 We therefore reverse that portion of the trial court's October 27, 2006, journal entry of judgment awarding $4,435.77 in damages, finding the correct amount to be $2,452.91. We reverse the trial court's December 14, 2006, order denying Buyers' a new trial, and remand the matter to the trial court with instructions to enter a journal entry of judgment for the correct amount of damages, $2,452.91.

### ATTORNEY'S FEE

¶ 43 The trial court granted Builder an attorney's fee based on two statutes: 12 O.S. 2001 and Supp.2002, § 936 and 12 O.S.2001 and Supp.2002, § 1101.1. As set out below, neither supports the award of a fee. The trial court's order granting an attorney's fee on the basis of these statutes is erroneous as a matter of law and is therefore reversed.

### *Section 936*

¶ 44 12 O.S.2001 and Supp.2002, § 936 provides for an attorney's fee when,

In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

¶ 45 As held in *Holbert v. Echeverria*, 1987 OK 99, 744 P.2d 960, an attorney's fee under § 936 cannot be awarded when the action is primarily one to recover damages for breach of a contract to convey real estate.

Seller may be allowed a counsel fee only if his plea for the award fall under the categories enumerated in 12 O.S.1981 § 936.24. Three alternatives could make § 936 applicable to the cause of action

Purchasers advanced in this case: (1) the contract in suit provides for recovery of attorney's fee, (2) the contract was for labor or services, or (3) the house could qualify for inclusion under the rubric of "goods, wares, or merchandise."

Firstly, a reading of the contract between Purchasers and Seller reveals no allusion to attorney's fee in the event of litigation. As there is no contractual basis for recovery of a fee, Seller may not rest his plea on that basis.

Secondly, the record indicates the primary purpose of the contract was to construct the house and to convey to Purchasers the real property on which it was located. The applicability of § 936's labor-and-services provisions is determined by the underlying nature of the suit. If recovery is sought for labor and services, as in the case of a failure to pay for them, the statute applies. Its provisions are inapposite if the suit be one for damages arising from the breach of an agreement that relates to labor and services. The question to be resolved is whether the damages arose directly from, or are merely collateral to, the rendition of labor or services. Seller did not counterclaim for the value of his labor and services. In fact, the real property in question had been sold to a third party before this cause went to trial. Recovery of money damages for breach of a contract to convey improved property clearly was the gravamen of the redress sought. The second alternative for application of § 936 must hence also fail.

Thirdly and finally, characterizing a house as "goods, wares or merchandise" would enlarge the scope of the statute to embrace realty. There is no warrant for judicial expansion of the Act's plain meaning.

Under the principle of *expressio unius est exclusio alterius*, § 936 is not available as a foundation for attorney's fee recovery in actions for breach of contract to sell real property.

*Id.*, at ¶¶ 18–22, 744 P.2d at 965, 966 (footnotes omitted).

¶ 46 This was not an action to recover on an open account or to recover for labor or services rendered. This was an action for the breach of a real estate contract. We reject Builder's claim that, in addition to being a suit to recover damages for breach of a real estate contract, its suit is also one to recover the costs associated with the modifications and extra custom work done on the property. As previously stated, those extra costs were part of the total market value of the property at the time of closing as reflected by the final purchase price of the property. Nowhere in this record is there any evidence that such extra costs were separate and apart from the real estate contract. Those extra costs were not the subject of a separate agreement which provided they would be collected after closing the real estate contract.

### Section 1101.1(B)

¶ 47 This statute provides no basis upon which to award an attorney's fee to Builder. Builder did not invoke the application of this statute because it never made a counteroffer. The relevant portions of § 1101.1(B) are set out and annotated below.

B. Other actions.

1. After a civil action is brought for the recovery of money or property in an action other than for personal injury, ... any *defendant* may file with the court, at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action. An offer of judgment shall be deemed to include any costs and attorney fees otherwise recoverable unless it expressly provides otherwise. If an offer of judgment is filed, the *plaintiff* or *plaintiffs to whom the offer of judgment is made shall,* within ten (10) days, file:

a. a written acceptance or rejection of the offer, or

b. a counteroffer of judgment, as described in paragraph 2 of this subsection.

If a *plaintiff fails to file a timely response, the offer of judgment shall be deemed rejected.* The fact an offer of judgment is made but not accepted or is deemed reject-

ed does not preclude subsequent timely offers of judgment.

2. In the event a defendant files an offer of judgment, the *plaintiff* may, within ten (10) days, file with the court a *counteroffer* of judgment to each defendant who has filed an offer of judgment and the claim or claims which are the subject thereof. If a counteroffer of judgment is filed, each defendant to whom a counteroffer of judgment is made shall, within ten (10) days, file a written acceptance or rejection of the counteroffer of judgment. If a defendant fails to file a timely response, the counteroffer of judgment shall be deemed rejected. The fact a counteroffer of judgment is made but not accepted or is deemed rejected does not preclude subsequent counteroffers of judgment if subsequent offers of judgment are made.

. . .

4. *If no* offer of judgment or *counteroffer* of judgment is accepted *and the judgment awarded the plaintiff is greater than one or more counteroffers of judgment,* the plaintiff shall be entitled to recover the reasonable litigation costs and reasonable attorney fees incurred by the plaintiff with respect to the action or the claim or claims included in the *counteroffer of judgment* from and after the date of the first counteroffer of judgment which is less than the judgment until the date of the judgment. Such costs and fees may be added to the judgment entered in favor of the plaintiff.

¶ 48 Buyers filed an offer of judgment pursuant to this statute. § 1101.1(B)(1). Builder did not respond as required by statute. § 1101.1(B)(1). Pursuant to that section, Buyers' offer was deemed rejected. Builder made no counteroffer to Buyers as provided in § 1101.1(B)(2). After the jury returned a verdict in its favor, Builder claimed it was entitled to an attorney's fee based on this statute, citing § 1101.1(B)(4). Builder argues this is true despite the fact it failed to submit a written counteroffer to Buyers pursuant to § 1101.1(B)(2). The trial court apparently agreed and awarded a fee. We hold this was legal error and reverse the award.

¶ 49 Builder's brief states: "If the legislature intended to require a plaintiff to make a counter-offer to trigger an award of fees, it would have said so." This is, in fact, exactly what the Legislature did in § 1101.1(B)(1):

If an offer of judgment is filed, *the plaintiff* or plaintiffs to whom the offer of judgment is made *shall,* within ten (10) days, *file:*

a. a written acceptance or rejection of the offer, or

b. a counteroffer of judgment, as described in paragraph 2 of this subsection.

¶ 50 Though a plaintiff is not penalized if it fails to make a counteroffer, it may not acquire the legal right to a fee if it fails to do so. A plain reading of § 1101.1(B)(4) further shows that only when such a written counteroffer is made can a plaintiff then be entitled to an attorney's fee if the resulting jury verdict exceeds its counteroffer:

If no offer of judgment or counteroffer of judgment is accepted and the *judgment awarded the plaintiff is greater than one or more counteroffers of judgment,* the plaintiff shall be entitled to recover the reasonable litigation costs and reasonable attorney fees incurred by the plaintiff.

¶ 51 Builder attempts to get around the statutory language by arguing that:

Thus it would appear that perhaps through a grammatical error in 12 O.S. § 1101.1(b)(4) the word "offer" was inadvertently omitted. The statute obviously was intended to include the words "offer or counteroffers" together even if the word "offer" was not included . . . ."

¶ 52 This argument has no merit. This statute was first enacted in 1995 and has been amended several times. The Legislature has had more than 12 years to make the correction suggested by Builder. It has not done so because use of the terms "offer" and "counteroffer" is carefully chosen. The statute is clear: under § 1101.1, defendants in lawsuits make offers to settle; plaintiffs make counteroffers. If a defendant's offer is rejected by the plaintiff, who then fails to obtain a verdict exceeding defendant's rejected offer, defendant is entitled to a fee. § 1101.1(B)(3). If a plaintiff's counteroffer is

rejected by a defendant, and the plaintiff obtains a verdict greater than its counteroffer, plaintiff is entitled to a fee. § 1101.1(B)(4). In any event, in order to obtain a fee under § 1101.1, a plaintiff must have filed a written counteroffer. Rejection, whether written or implied, is not a counteroffer. Neither is the lack of a counteroffer the functional equivalent of a zero-dollar counteroffer, against which a verdict is measured. Builder's failure to file a written counteroffer precludes its recovery of an attorney's fee under § 1101.1.

## COSTS

¶ 53 The trial court awarded Builder its litigation costs pursuant to 12 O.S.2001, § 928, to which Buyers do not object on appeal. The trial court's award of costs is affirmed.

## CONCLUSION

¶ 54 To summarize, the jury was properly instructed, but given erroneous damage figures. The maximum possible verdict, as shown by the proven damages, totals $2,452.91. The verdict rendered in excess of this amount is reversed. The trial court's refusal to grant a motion for new trial is reversed and the matter remanded to the trial court to enter judgment in favor of Builder for the sum of $2,452.91 and applicable interest, plus $903.00 in costs. The trial court's award of an attorney's fee to Builder is reversed as it is unsupported by either 12 O.S.2001 and Supp.2002, § 936 or 12 O.S. 2001 and Supp.2002, § 1101.1.

¶ 55 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

WISEMAN, J., and FISCHER, J., concur.