2010 OK 47

**EAGLE BLUFF, L.L.C.,**
**Plaintiff/Appellee,**

v.

**Patrick TAYLOR and Marshaleta M.**
**Taylor, Defendants/Appellants.**

**No. 105,982.**

Supreme Court of Oklahoma.

June 22, 2010.

Tommy R. Dyer, Jr., Davis & Thompson, Jay, OK, for Plaintiff/Appellee, Eagle Bluff, L.L.C.

Douglas L. Boyd, Tulsa, OK, for Defendants/Appellants, Patrick L. Taylor and Marshaleta M. Taylor.

**REIF, J.:**

¶ 1 The issue presented for certiorari review concerns the circumstances under which a trial court can award an attorney's fee to a plaintiff who prevails on his claim and defendants' counterclaims following transfer of the case from the small claims docket to the district court civil docket. More particularly, we are asked to determine whether an attorney's fee can be awarded under 12 O.S.2001 § 1757(C) [1] in all cases where a defendant requests a transfer; including cases in which a transfer from small claims to the civil docket is otherwise mandated by 12 O.S.2001 § 1759 [2] due to the defendant's filing of counterclaims in excess of the small claims juris-

---

1. Title 12 O.S.2001 § 1757(C) provides:

Within twenty (20) days of the date the transfer order is signed, the plaintiff shall file a petition that conforms to the standards of pleadings prescribed by the Oklahoma Pleading Code. The answer of the defendant shall be due within twenty (20) days after the filing of the petition and the reply of the plaintiff in ten (10) days after the answer is filed. If the plaintiff ultimately prevails in the action so transferred by the defendant, a reasonable attorney's fee shall be allowed to plaintiff's attorney to be taxed as costs in the case, in addition to any sanctions which the court may deem appropriate.

2. Title 12 O.S.2001 § 1759 provides:

A. Except as provided by subsection C of this section, if a claim, a counterclaim, or a setoff is filed, prior to the expiration of the time prescribed by Section 1758 of this title, for an amount in excess of Six Thousand Dollars ($6,000.00), the action shall be transferred to another docket of the district court unless both parties agree in writing and file said agreement with the papers in the action that said claim, counterclaim, or setoff shall be tried under the small claims procedure. If such an agreement has not been filed, a judgment in excess of Six Thousand Dollars ($6,000.00) may not be enforced for the part that exceeds Six Thousand Dollars ($6,000.00). If the action is transferred to another docket of the district court, the person whose claim exceeded Six Thousand Dollars ($6,000.00) shall deposit with the clerk the court costs that are charged in other cases, less any sums that have been already paid to the clerk, or the claim shall be dismissed and the remaining claims, if any, shall proceed under the small claims procedure.

B. If the action is transferred to another docket of the district court, the plaintiff shall file a petition that conforms to the standards for pleadings prescribed by the Oklahoma Pleading Code, Section 2001 et seq. of this title, within twenty (20) days from the timely filing of the claim, counterclaim, or setoff. The answer of the defendant shall be due within twenty (20) days after the filing of the petition and the reply of the plaintiff shall be due within ten (10) days after the answer is filed.

C. Except as provided by Section 1757 of this title, if a defendant does not file a counterclaim within the period prescribed by Section 1758 of this title, the action shall not be transferred to another docket of the district court.

dictional limit. We are also asked to determine whether the record shows a basis to support the trial court's award of an attorney's fee as a sanction under the bad faith exception to the American Rule and 12 O.S. 2001 § 2011.1.[3] Upon certiorari review, we hold that a defendant's request for transfer is not the determining factor in the application of § 1757(C), but instead it is the nature of the transfer—discretionary under § 1757(A) and (B) versus mandatory under § 1759—that determines the applicability of § 1757(C). The legislature expressly limited the applicability of § 1757(C) to cases "so transferred," an unmistakable reference back to the discretionary authority and procedure of § 1757(A) and (B). The statute governing mandatory transfers, 12 O.S.2001 § 1759, does not similarly provide an attorney's fee in cases so transferred. We further conclude that the record does not support the award of an attorney's fee under either the bad faith exception to the American Rule or under § 2001.1. Accordingly, we reverse the trial court's award of an attorney's fee to developer for services related to developer's successful defense of owners' counterclaims, notwithstanding the transfer of the case from small claims to the civil docket.

3. Title 12 O.S.2001 § 2011.1 provides:

In any action not arising out of contract, if requested the court shall, upon ruling on a motion to dismiss an action or a motion for summary judgment or subsequent to adjudication on the merits, determine whether a claim or defense asserted in the action by a nonprevailing party was frivolous. As used in this section, "frivolous" means the claim or defense was knowingly asserted in bad faith or without any rational argument based in law or facts to support the position of the litigant or to change existing law. Upon so finding, the court shall enter an order requiring such nonprevailing party to reimburse the prevailing party for reasonable costs, including attorney fees, incurred with respect to such claim or defense. In addition, the court may impose any sanction authorized by § 2011 of this title.

4. Marshaleta Taylor initially contacted the developer in June or July of 2001, and the developer provided a preliminary draft of the Plat and Covenants for her review. The developer advised Taylor that sales would not take place until the Plat and Covenants were finalized and recorded. The preliminary draft did not include language authorizing the developer to act in place of a homeowners' association prior to its

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2 On August 1, 2001, Eagle Bluff, L.L.C., as the developer of approximately ten acres of waterfront property near Grand Lake, filed a Plat and a "Restrictive Covenants & Dedication," for thirteen lots and a common area (Lot 14) of approximately three acres. On August 10, 2001, Patrick L. Taylor and Marshaleta Taylor contracted with the developer for the purchase of Lot 8.[4] The parties also signed an Addendum to delay the closing until completion of the improvements.[5] At that time, the developer was in the process of completing improvements to the property, including installing a paved road, street lighting, and a gated entrance. The parties closed on November 27, 2001. Owners subsequently constructed a home on their lot.

¶3 The final recorded restrictive covenants provided that a homeowners' association would be formed after the sale of nine lots, and the association would be responsible for the assessment of the maintenance expenses. Prior to the formation of the association, the developer was to act in the stead of the association and was given all powers, including the right to assess maintenance ex-

formation. In the final recorded version of the "Restrictive Covenants & Dedication," language had been added at the end of paragraph 21 authorizing the developer to act in place of a homeowners' association prior to its formation.

5. Paragraph 3 of the Addendum states, in part:

The parties recognize that there are a number of substantial improvements to the property being platted as Eagle Bluff Subdivision which have not yet been completed by Seller. The parties further recognize and agree that the completion of said improvements and full payment by the Seller of the cost thereof is essential to the value of the subject property and that without those improvements the Buyer would not be willing to pay the purchase price set forth above. Among those improvements are (i) the full installation of all required utilities; (ii) the completion of grading and paving of the roadway through the subdivision, as depicted on the attached Plat; (iii) the completion of the construction of the lake on Lot 14; and (iv) the completion of the construction of the gated entryway to the subdivision, as depicted on "Exhibit B" attached hereto. It is therefore agreed that the closing date for this transaction shall be within (30) days following the completion of these improvements.

penses.[6] In September 2004, the developer notified the property owners that nine lots had not been sold, and that a homeowners' association was not being formed. However, the developer was instituting a common area charge of $75 monthly, effective October 1, 2004, for monthly expenses of managing the common area, such as mowing, electricity, water, and maintenance on the road and gate.

¶ 4 On September 21, 2005, the developer filed its claim in small claims court against the owners for $900. The developer sought recovery for unpaid assessments for the owners' pro rata share of the maintenance expenses based on the restrictive covenants or, alternatively, unjust enrichment. The owners answered and asserted counterclaims for breach of contract for developer's failure to perform its obligation to construct a lake on Lot 14; for false statements made by developer to fraudulently induce the property owners into entering into the contract; and for fraud and deceit for filing covenants and restrictions different from those provided to the owners.[7] The owners sought damages in excess of $10,000, and moved to transfer the case to the district court civil case docket based on the discretionary transfer provision of 12 O.S.2001 § 1757 and the mandatory transfer provision of 12 O.S.2001 § 1759. The owners stated that there was no agreement among the parties to maintain the action within the small claims division, and that the court was therefore required to transfer the case under section 1759.

¶ 5 The court transferred the case to the civil docket of the district court. In its or-

der, the court stated that "[p]ursuant to 12 O.S. § 1759, this Court is required by law to transfer this case due to the filing of counterclaims by Defendants with a prayer for judgment exceeding $4,500.00." The developer then filed its petition in district court for assessments under paragraph 21 of the restrictive covenants, seeking its expenses for maintaining the streets, gate, watering system, and common areas.[8] In the alternative, the developer sought damages based on unjust enrichment on the grounds that the owners benefited from the developer's maintaining the common areas of the development. The developer also answered the counterclaims, asserting that it constructed a lake on Lot 14, but that the lake will not hold water. The developer stated that it was exploring options with the homeowners regarding the lake. The developer also states that Marshaleta Taylor initialed each page of the final covenants at the time of her execution of the contract, and that she had both actual and constructive notice of the covenants prior to approval of the contract.

¶ 6 On July 25, 2007, the court granted the developer summary recovery for the pro rata share of the maintenance expenses. In addition, the court granted the developer summary relief against the owners on all their claims of fraud except for the claim of fraud relating to the construction of the lake on Lot 14. The court also denied developer's request for summary relief on owners' claim for breach of contract relating to the construction of the lake. At trial, the court sustained the developer's demurrer as to

---

6. Paragraph 21 of the Restrictive Covenants and Dedication states:

The Eagle Bluff Homeowners Association shall be formed at such time as nine (9) of the lots reflected on the accompanying plat have been sold or otherwise transferred to third party purchasers. Each purchaser of a lot or lots shall be required to become a member of the Eagle Bluff Homeowners Association, after it has been formed. The Eagle Bluff Homeowners Association shall assess the owner of each lot his proportionate share of money for maintaining the water system, the property, and all other costs sustained in providing common area maintenance for streets, utilities and other similar services. The assessment shall be on a per lot basis of those lots sold, all lots being equally assessed. The Eagle Bluff Homeowners Association shall be empowered to promulgate such other and

further written specifications of the members rights and duties as it desires, provided, such specifications are not inconsistent with these restrictive covenants. Until such time as the Eagle Bluff Homeowners Association shall have been formed, Eagle Bluff shall act in the stead of such homeowners association, and shall have full governing authority to do all things contemplated by the formation and operation of such homeowners association.

7. The owners also asserted a counterclaim for specific performance, which they dismissed on September 25, 2006.

8. The vast majority of the expenses were for the mowing of Lot 14, and the expenses related to the gate (electric and phone).

owners' claim for fraud in the inducement relating to the construction of the lake. The jury found in favor of the developer on the owners' remaining claim for breach of contract relating to construction of the lake. The court entered judgment for the developer for $1,575 for maintenance expenses, and for the developer and against the owners on their counterclaims.

¶ 7 The developer then sought attorney's fees in the total amount of $90,927.50, relying on 12 O.S.2001 § 1757(C). With respect to the counterclaims, the developer relied on section 936 as support for an award of fees incurred in the defense of owners' claims for breach of contract relating to the construction of the lake.

¶ 8 The trial court found that the developer was entitled to recover attorney's fees for the prosecution of its claim in the amount of $13,500, for the defense of the counterclaim for breach of contract in the amount of $48,000, and for the defense of the counterclaim for fraud in the inducement claim in the amount of $19,500, all pursuant to 12 O.S.2001 § 1757(C). The property owners appealed the fee awards of $48,000 with respect to the breach of contract claim and $19,500 with respect to the fraud in the inducement claim. The fee award of $13,500 with respect to the claim for maintenance fees was not appealed. The Court of Civil Appeals reversed the fee awards on the counterclaims on the grounds that the developer was not entitled to attorney's fees under section 1757(C), and that "Plaintiffs are not entitled to attorney fees because § 1759 does not allow attorney fees." Although we agree that the Court of Civil Appeals properly determined that section 1757(C) does not apply to mandatory transfers pursuant to § 1759, we previously granted certiorari to give precedential guidance concerning the award of an attorney's fee in cases transferred from the small claims docket.

## A TRIAL COURT CANNOT AWARD ATTORNEY FEES UNDER SECTION 1757(C) WHERE EXCESS COUNTERCLAIMS REQUIRE A TRANSFER FROM THE SMALL CLAIMS DOCKET UNDER SECTION 1759(A)

■ ¶ 9 This case concerns a dispute over the scope of statutory authority for the award of an attorney's fee in cases transferred from the small claims docket. The controversy presents a question of law and this Court has plenary authority to independently decide the issue without deference to the trial court's determination. See Finnell v. Jebco Seismic, 2003 OK 35, ¶ 7, 67 P.3d 339, 342; Neil Acquisition, L.L.C. v. Wingrod Investment Corp., 1996 OK 125, ¶ 5, n. 1, 932 P.2d 1100, 1103.

■ ¶ 10 Statutory law governing small claims procedure has two statutes addressing transfer of cases. The first statute—12 O.S. 2001 § 1757—addresses transfer of cases "on the motion of the defendant" and authorizes transfer "in the discretion of the court." This statute provides for the award of a reasonable attorney's fee to "the plaintiff [who] ultimately prevails in the action so transferred." The second statute—12 O.S. Supp.2009 § 1759—addresses transfer of cases in which a claim, a counterclaim, or setoff is filed for an amount in excess of the small claims limit. This statute directs that "the action shall be transferred to another docket of the district court unless both parties agree in writing ... that said claim, counterclaim, or setoff shall be tried under the small claims procedure." This statute is silent concerning the award of an attorney's fee in the event the plaintiff ultimately prevails in a transferred case. Reconciling these statutes and applying them to the facts of the case at hand is likewise a question of law.

¶ 11 It is clear from the language in each section that they address different circumstances under which transfer takes place. Under § 1757(A), a defendant must affirmatively seek the transfer by motion and the decision to transfer lies within the discretion of the court. Additionally, before exercising its discretion, § 1757(B) requires the court to hold a hearing on the motion to transfer and to consider a four-factor test in deciding whether to transfer or retain the case. In a case transferred under these circumstances, a plaintiff is entitled to recover a reasonable attorney's fee upon prevailing in a case "so transferred."

¶ 12 The circumstance to which § 1759 applies is a case involving a claim, counterclaim, or setoff for an amount in excess of the jurisdictional limit. The statute provides that such cases "shall be transferred to another docket of the district court." While § 1759 does not require a defendant to request the transfer, this Court has said that a small claims defendant with an excess counterclaim is required to assert it and to "press for a transfer of the case to another district court docket at the peril of losing the opportunity to bring the counterclaim in a later action." *McDaneld v. Lynn Hickey Dodge,* 1999 OK 30, ¶ 1, 979 P.2d 252, 253. The statute allows the parties to agree in writing to try such excess claims under small claims procedure. In the event the trial court does transfer a case involving such excess claims, § 1759 makes no provision for a plaintiff to recover a reasonable attorney's fee should the plaintiff prevail in the transferred case.

¶ 13 Reading sections 1757 and 1759 together reveals that the Legislature did not intend for a plaintiff to recover an attorney's fee in every case that is transferred from the small claims docket. The Legislature provided for recovery of an attorney's fee only where the court has transferred a case in the exercise of its discretion, and in accordance with the procedure set forth in subsections (A) and (B) of § 1757. The language in subsection (C) of § 1757 that authorizes an attorney's fee in cases "so transferred" clearly refers to a transfer in accordance with subsections (A) and (B).

¶ 14 In the present case, the counterclaims exceeded the statutory limits of the small claims court, and the parties did not agree to maintain the action in small claims court. The court was therefore required to transfer the action under § 1759, which it did. Given the fact that the court was not exercising its discretionary power to transfer a case from the small claims under § 1757(A) and (B), the attorney's fee provision of § 1757(C) is inapplicable. The property owners' filing of the motion to transfer the case does not change this result, as they were obliged to "press for a transfer of the case to another district court docket" as this Court explained in the *McDaneld* case. Be-

cause § 1759 does not provide for the recovery of an attorney's fee if a plaintiff prevails in the transferred action, the award of an attorney's fee by the court to which the case is transferred will be governed by the law generally applicable to attorney fees.

¶ 15 Following the transfer under § 1759, the developer was only entitled to recover an attorney's fee if supported by an independent basis for recovery. Attorney's fees are only awarded in Oklahoma if authorized by agreement of the parties, by statute, or where the fee is an item of damage caused by the wrong itself rather than an item of expense incurred in attempting to secure redress for the wrong. *See Griffin v. Bredouw,* 1966 OK 226, 420 P.2d 546. This is known as the "American Rule."

¶ 16 "The American Rule is firmly established in this jurisdiction. That is, each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties. Exceptions to the American Rule are narrowly defined." *Kay v. Venezuelan Sun Oil Co.,* 1991 OK 16, ¶ 5, 806 P.2d 648, 650 (footnotes omitted). Statutes authorizing the award of attorney's fees must be strictly construed, and exceptions to the American Rule are carved out with great caution because liberality of attorney's fees awards against the non-prevailing party have a chilling effect on open access to the courts. *See Beard v. Richards,* 1991 OK 117, ¶ 12, 820 P.2d 812, 816.

¶ 17 The trial court awarded attorney's fees to the developer on both the developer's claim for maintenance fees and on property owners' counterclaims for breach of contract and fraud in the inducement. Property owners did not appeal the award of attorney's fees on the developer's claim for maintenance fees, and that award has been paid. With respect to the counterclaim for fraud in the inducement, there is no basis for the trial court's award of fees. There is no statutory authority for an award of attorney fees for a claim based on fraud and attorney fees are not generally an element of damages

for fraud, fraudulent inducement, and deceit. *See Stevenson v. Stevenson,* 1984 OK CIV APP 10, 680 P.2d 642.

¶ 18 With respect to property owners' counterclaim for breach of contract, the owners relied on an Addendum to their purchase contract for the lot. The Addendum included a provision whereby the developer agreed to construct a lake on the subdivision grounds. Property owners stated that the developer breached the contract by failing to construct the lake as required. The developer contends that 12 O.S.2001 § 936 provides support for the award of fees incurred in defense of property owners' claims for breach of contract relating to the construction of the lake. We cannot agree.

¶ 19 "[T]he mandatory provisions of § 936 that the prevailing party in an action to recover for labor and services shall be allowed a reasonable attorney fee are strictly applied." *Kay,* 1991 OK 16, ¶ 5, 806 P.2d at 650 (footnotes omitted). The proposed construction of the lake was not a contract for labor or services within section 936. The construction was a part of the general improvements to the development, which were included in the total market value of the property. The cost of the construction of the lake was not separate and apart from the real estate contract.

¶ 20 Section 936 does not apply in actions for breach of contract to sell real property. In *Holbert v. Echeverria,* 1987 OK 99, 744 P.2d 960 (superseded by statute on other grounds), this Court held that a vendor of real estate under a construction and sale contract was not entitled to attorney's fees after successfully defending against a suit by purchasers alleging fraud and breach of contract. The Court noted that the contract between the seller and purchasers did not allude to an attorney's fee in the event of litigation. The court then stated that the applicability of the labor and services provision of section 936 is determined by the "underlying nature of the suit." *Id.* at ¶ 20, 744 P.2d at 966 (citing *Burrows Const. Co. v. Independent School Dist.,* 1985 OK 57, ¶ 8, 704 P.2d 1136, 1138 and *Ferrell Construction Co. v. Russell Creek Coal Co.,* 1982 OK 24,

¶ 30, 645 P.2d 1005, 1011). Where recovery is sought for labor and services, such as a failure to pay for them, the statute applies. However, where the suit is for damages arising from the breach of an agreement "that relates to labor and services," the statute is not applicable. *Holbert,* 1987 OK 99, ¶ 20, 744 P.2d at 966. The question is "whether the damages arose directly from, or are merely collateral to, the rendition of labor or services." *Id.*

¶ 21 The court in *Holbert* noted that the seller did not counterclaim for the value of his labor and services, and that the "[r]ecovery of money damages for breach of a contract to convey improved real property clearly was the gravamen of the redress sought." *Id.* The court observed that "the primary purpose of the contract was to construct the house and to convey to Purchasers the real property on which it was located." *Id.* The court further found that the plain language of section 936 did not encompass realty, and that a house could not be characterized as "goods, wares or merchandise." *Id.* at ¶ 21; 744 P.2d at 966; *see also Oltman Homes, Inc. v. Mirkes,* 2008 OK CIV APP 64, 190 P.3d 1182.

¶ 22 In the present case, it is clear from the record that the owners' counterclaim was an action for breach of a real estate contract. Owners sought money damages for breach of the contract to convey improved real property, and not for the failure to properly construct the lake or any labor and services in the construction of the lake. The construction of the lake was part of the total market value of the property, and there is nothing in the record to indicate that the cost of construction of the lake was separate and apart from the real estate contract. In short, owners' counterclaim concerned developer's alleged breach of a contract that merely "relate[d] to labor and services," and that contract did not provide for recovery of attorney's fees. There simply was no basis for an award of fees for the defense of the counterclaim based on breach of contract.

¶ 23 The developer also requested an attorney's fee based on the bad faith exception to the American Rule and 12 O.S.2001

§ 2011.1.[9]  The issues of bad faith and section 2011.1 sanctions were not raised until the developer's response to the motion to reconsider.  The developer did not request an evidentiary hearing on these issues, and they were not part of any evidentiary hearing.  The trial court made no findings on bad faith or frivolous claims, and these issues may not be considered on appeal.[10]

¶ 24 The trial court's award of an attorney's fee to Eagle Bluff for prevailing on the defendants' counterclaims is reversed.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED.**

¶ 25 ALL JUSTICES CONCUR.

9. Title 12 O.S.2001 § 2011.1 provides:
In any action not arising out of contract, if requested the court shall, upon ruling on a motion to dismiss an action or a motion for summary judgment or subsequent to adjudication on the merits, determine whether a claim or defense asserted in the action by a nonprevailing party was frivolous.  As used in this section, "frivolous" means the claim or defense was knowingly asserted in bad faith or without any rational argument based in law or facts to support the position of the litigant or to change existing law. Upon so finding, the court shall enter an order requiring such nonprevailing party to reimburse the prevailing party for reasonable costs, including attorney fees, incurred with respect to such claim or defense.  In addition, the court may impose any sanction authorized by Section 2011 of this title.

10. Like other sanctions, attorney's fees should not be assessed lightly or without fair notice, an opportunity to be heard, and without a finding of bad faith.  *Winters v. City of Oklahoma City*, 1987 OK 63, ¶¶ 11–12, 740 P.2d 724, 727.