2011 OK CIV APP 63

**Michelle Lea McKIDDY,**
**Plaintiff/Appellee,**

v.

**Warren Bernard ALARKON,**
**Defendant/Appellant.**

No. 107,614.

Court of Civil Appeals of Oklahoma,
Division No. 2.

April 21, 2011.

Letitia Ness Brady, Candee R. Wilson, Wilson and Ness, PLLC, Norman, Oklahoma, for Plaintiff/Appellee.

M. Eileen Echols, David W. Echols, Jonathan D. Echols, Amy L. Howe, Lindsey W. Andrews, Echols and Associates, Oklahoma City, Oklahoma, for Defendant/Appellant.

DEBORAH B. BARNES, Presiding Judge.

¶1 Defendant/Appellant Warren Bernard Alarkon (Father) appeals the trial court's journal entry filed on September 8, 2009, granting in part and denying in part Plaintiff/Appellee Michelle Lea McKiddy's (Mother) application for attorney's fees.[1] Based on our review of the facts and applicable law, we find the trial court did not abuse its discretion. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Father and Mother, who have never been married to each other, are the parents of a minor child (Child) born in 2002. Mother initiated these child custody proceedings by filing a Petition on November 8, 2002, requesting that the trial court enter an order of paternity, settle custody with Mother, establish child support, and determine appropriate visitation for Father.[2] In his amended answer filed on December 30, 2002, Father admitted that he is the biological father of Child, but requested that the parents be granted joint custody.[3] In a Decree of Pa-

---

1. Mother was awarded attorney's fees in the amount of $8,750, which "shall accrue interest at the statutory rate until paid." Record (R.), p. 343.

2. R., p. 1.

3. R., p. 19.

ternity filed on May 20, 2003, the trial court "found [Father] to be the natural and biological father of [Child]," awarded legal custody of Child to Mother, and awarded Father visitation rights.[4] The trial court stated that "[t]here shall be a gradual transition over the next three to six months to extended overnight visitation with [Father]. Said visitation shall be reviewed by this Court within six months with the intent of promoting shared parenting if deemed workable by an independent evaluator." Father filed a motion to modify custody on February 25, 2004, requesting that custody be placed with him,[5] but he subsequently withdrew this motion.[6]

¶ 3 On July 28, 2006, Father filed a motion to modify visitation, stating that his work and school schedule had changed and that it was necessary that his visitation schedule be modified.[7] In October of 2007, Father's visitation was modified by order of the trial court.

¶ 4 Father filed a second motion to modify custody on December 6, 2007, requesting that custody of Child be awarded to him, and that Mother be awarded visitation.[8] Father claimed that Mother is "wholly unfit and unsuitable to be the primary custodial parent for the minor child." He alleged that "[Mother] has continually berated and belittled [Father] and [Child] and in all respects acted to destroy or diminish or alienate the relationship between [Father] and [Child]. [Mother] consistently negatively references [Father's] heritage and culture, often in the presence of [Child]." He also alleged that

Mother thwarted his attempts to exercise his visitation rights.

¶ 5 This motion was ultimately settled by agreement of the parties, with custody remaining with Mother and a new, more convenient visitation schedule adopted for Father.[9] The parties' agreement was memorialized in a journal entry filed on May 21, 2009.

¶ 6 On June 22, 2009, Mother filed an application for attorney's fees and costs, requesting that she be awarded $10,727.88 as "reimbursement of her attorney fees and costs in the action filed by the Defendant December 6, 2007 and concluded May 21, 2009."[10] According to Mother in her application, Father "unreasonably and unduly protract[ed] the litigation," and "[t]his litigious pattern of [Father] has caused [Mother] and her family great financial hardship over the years."[11]

¶ 7 The filings of which Mother complains in her application, and which allegedly required her to spend inordinate time and money filing responses and making appearances in court, include the following:

- On *December 6, 2007*, Father filed a *motion to modify custody* in which he requested that custody of Child be awarded to him.[12] This motion was ultimately settled by agreement of the parties, with custody remaining with Mother and a more convenient visitation schedule adopted for Father.[13]

- On *December 6, 2007*, Father filed a *motion for custodial evaluation.*[14] On

---

4. R., p. 52. The trial court found that it was acting in compliance with, among other things, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 43 O.S.2001 §§ 551–101–551–402.

5. R., p. 67.

6. R., p. 84. Also on February 25, 2004, Father filed a Motion For Drug Testing of Plaintiff, in which he alleged that Mother "use[d] alcohol, marijuana, crack, [ecstasy], powdered cocain[e] and crank," and requested the trial court to order Mother to submit to a drug assessment and hair follicle test. R., p. 75. Mother filed a motion to continue on February 27, 2004, admitting that she was "currently a voluntary patient at Valley Hope Treatment Center in Cushing, Oklahoma. . . ." R., p. 78.

7. R., p. 85.

8. R., p. 203.

9. R., pp. 320, 328, 330.

10. R., p. 331.

11. *Id.*

12. R., p. 203.

13. R., pp. 320, 328, 330. According to Mother, the new visitation schedule reflected· Father's new schedule following his graduation from law school. R., p. 330.

14. R., p. 211.

*March 28, 2008,* Father filed a second *motion for custodial evaluation.*[15] The trial court sustained this second motion in its April 28, 2008, order, granting a custodial evaluation at the expense of Father.[16]

- On *December 6, 2007,* Father filed a *motion for appointment of a guardian ad litem or in the alternative appointment of a parenting coordinator.*[17] The trial court sustained this motion in its April 28, 2008, order, as to the appointment of a guardian ad litem.

- On *December 7, 2007,* he filed an *"Application For [Contempt] Citation."* [18] In an order filed on May 21, 2009, the trial court stated that this application "is dismissed by agreement." [19]

- Although Mother asserts that her deposition was taken on September 27, 2007, and October 6, 2007, totaling over five hours of testimony, and that the purpose of further deposition would only be to annoy, harass, embarrass, burden and oppress her,[20] Father filed a *"Notice to Take Deposition and Subpoena Duces Tecum"* on *March 19, 2008.*[21]

On *April 3, 2008,* Father filed a *motion for continuance,* requesting the trial court to move back the hearing set for May 23, 2008, so that he could properly present all evidence and ensure that all reports and evaluations were complete, "including [Father's] discovery process by taking the deposition of [Mother]." [22]

On January 14, 2008, a hearing was held on Father's motion to modify custody, his "Application For Citation," his motion for custodial evaluation, and his motion for appointment of a guardian ad litem or in the alternative appointment of a parenting coordinator.[23] On *April 14, 2008,* Father filed a *"Motion to Settle Journal Entry."* [24] In Mother's response to this motion, Mother states that Father's proposed order inadequately summarized the trial court's ruling, and that Mother requested Father make certain changes to the proposed order. Mother claims that she subsequently received "the same Order [from Father] … without any requested changes made or any explanation or response." [25] The trial court's order, filed on April 28, 2008, reflects the changes proposed by Mother.

On *June 23, 2008,* Father filed a *"Motion to Reconsider or Clarify Court's Ruling of April 28th, 2008."* [26]

¶ 8 A hearing was held on Mother's application for attorney fees, but a transcript of that hearing is not contained in the record on appeal.[27] In a journal entry filed on September 8, 2009, the trial court granted in part and denied in part Mother's application, and entered judgment in favor of Mother in the amount of $8,750, for attorney's fees, with interest accruing at the statutory rate until paid. From this journal entry, Father appeals.

## STANDARD OF REVIEW

¶ 9 "A trial court's attorney fees award is reviewed for abuse of discretion."

15. R., p. 254.

16. R., p. 313.

17. *Id.*

18. R., p. 216.

19. R., p. 324.

20. R., pp. 246, 249.

21. R., p. 251.

22. R., pp. 258–259.

23. R., p. 277.

24. R., p. 260.

25. R., pp. 263–264.

26. R., p. 279.

27. In fact, both parties state that no transcript was made of the hearing on attorney's fees. *See* Designation of Record and Counter–Designation of Record for Appeal. Furthermore, no narrative statement of the proceedings in lieu of a transcript has been made pursuant to Rule 1.30 of the Oklahoma Supreme Court Rules (Okla. Sup.Ct.R. 1.30, 12 O.S.2001, ch. 15, app. 1).

*Spencer v. Oklahoma Gas & Electric Co.,* 2007 OK 76, ¶ 13, 171 P.3d 890, 895 (discussing *State of Oklahoma ex rel. Burk v. City of Oklahoma City,* 1979 OK 115, ¶ 22, 598 P.2d 659, 663). "What constitutes a reasonable attorney fee is a matter addressed to the sound discretion of the trial court to be decided based on various factors and a judgment awarding attorney fees will not be reversed absent an abuse of discretion." *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.,* 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046 (citations omitted). "As a general matter, an abuse of discretion review standard includes appellate examination of both fact and law issues ... and abuse occurs when the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision." *Id.* (citations omitted).

■ ¶ 10 Where the issue presented is whether a party is entitled to an award of attorney's fees pursuant to mandatory statutory language, and the relevant facts are not in dispute, we review the issue *de novo. Finnell v. Jebco Seismic,* 2003 OK 35, ¶ 7, 67 P.3d 339, 342. That is, statutory interpretation presents a question of law which is subject to a *de novo* standard of review. *Williams v. Smith & Nephew, Inc.,* 2009 OK 36, ¶ 8, 212 P.3d 484, 486.

## ANALYSIS

¶ 11 Father argues that the trial court erred in awarding attorney's fees to Mother. Father admits that the reasonableness of the amount of attorney's fees is not at issue because the parties stipulated to the reasonableness of the hourly rate and total fees submitted by Mother's counsel.[28] However, Father argues that the trial court's determi-

nation that Mother is *entitled* to an award of attorney's fees is in error.

■ ¶ 12 "The American Rule is firmly established in this jurisdiction. That is, each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties. Exceptions to the American Rule are narrowly defined." *Eagle Bluff, L.L.C. v. Taylor,* 2010 OK 47, ¶ 16, 237 P.3d 173, 179 (quoting *Kay v. Venezuelan Sun Oil Co.,* 1991 OK 16, ¶ 5, 806 P.2d 648, 650).[29] "Statutes authorizing the award of attorney's fees must be strictly construed," and exceptions to the American Rule are "carved out with great caution" because "liberality of attorney's fees awards" has a "chilling effect on open access to the courts." *Id.*

¶ 13 Regarding statutory interpretation, the Oklahoma Supreme Court has stated:

The goal of inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature. It is presumed that the law-making body has expressed its intent in a statute's language and that it intended what it so expressed. If the meaning of a statute is plain and unambiguous, it will not be subjected to interpretation by reference to rules of judicial construction but will instead receive the effect its language dictates. Only if legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, are rules of statutory interpretation to be invoked and employed. The determination of legislative intent controls statutory interpretation by the judiciary. When possible, different provisions must be construed together to effect a harmonious whole.

---

28. Father's Brief-in-Chief, pp. 22, 27.

29. In addition, trial courts have an inherent equitable power to award attorney's fees regardless of the fact that an award is not authorized by statute or contract, whenever overriding considerations, such as oppressive behavior on the part of a party, indicate the need for such a recovery. *Garnett v. Government Employees Insurance Co.,* 2008 OK 43, ¶ 18, 186 P.3d 935, 943. However, sanctions assessed pursuant to a trial court's inherent, equitable powers are not to be awarded lightly or without fair notice and a hearing. *Id.* Because, among other things, "fair notice and a hearing" regarding a party's request for attorney's fees pursuant to the trial court's "inherent equitable power" are required, and because there is no indication of such "fair notice and hearing" having occurred regarding Mother's request for attorney's fees upon this basis, we will not consider the trial court's inherent authority as a possible basis for the attorney's fees award in this case.

*In the Matter of BTW,* 2010 OK 69, ¶ 12, 241 P.3d 199, 205 (footnotes omitted).

### I. Title 43 O.S. Supp.2003 § 110 is inapplicable to this case.

¶ 14 Although Mother and Father appear to agree that 43 O.S. Supp.2003 § 110(E) is the applicable statute regarding the award of attorney's fees to Mother in this lawsuit, "[a] stipulation between parties or their counsel cannot control the action of the court in a matter of law, although they may stipulate respecting facts." *Keota Mills & Elevator v. Gamble,* 2010 OK 12, ¶ 19, 243 P.3d 1156, 1162 (quoting *First National Bank of Cordell v. City Guaranty Bank of Hobart,* 1935 OK 1105, ¶ 0, 174 Okla. 545, 51 P.2d 573).

¶ 15 Title 43 O.S. Supp.2003 § 110 is not applicable to this case. Section 110 states in pertinent part:

> D. Upon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.

> E. The court may in its discretion make additional orders relative to the expenses of any such subsequent actions, including but not limited to writs of habeas corpus, brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final orders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.

Accordingly, § 110 provides a potential basis for an award of attorney's fees "[u]pon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation," and in "subsequent actions...." However, because Father and Mother were never married and, hence, were never "grant[ed] a decree of dissolution of marriage, annulment of a marriage, or legal separation," § 110 is inapplicable to this case and cannot form the

basis of an award of attorney's fees to Mother.[30]

### II. The attorney's fee award is supported by other statutory provisions.

¶ 16 "If the trial court reaches the correct result but for the wrong reason, its judgment is not subject to reversal. Rather th[is] Court is not bound by the trial court's reasoning and [we] may affirm the judgment below on a different legal rationale." *Dixon v. Bhuiyan,* 2000 OK 56, ¶ 9, 10 P.3d 888, 891 (footnotes omitted).

¶ 17 Furthermore, the journal entry awarding attorney's fees does not set forth the basis for the award, and the record on appeal does not contain a transcript of the hearing on the motion for attorney's fees. Although Mother's application for attorney's fees is contained in the record, this Court has no record of the arguments and evidence presented to the trial court at the hearing. Therefore, and in accordance with the following cases, if we determine that one or more statutory provisions exist in support of the award, we must find that the trial court did not abuse its discretion by awarding attorney's fees to Mother.

¶ 18 In *Weston v. Independent School District No. 35 of Cherokee County,* 2007 OK 61, 170 P.3d 539, the Oklahoma Supreme Court, after setting forth two statutory provisions, one of which supported the trial court's award of attorney's fees, stated:

> The trial judge is presumed to be aware of these statutory provisions. We do not have a transcript of the hearing on attorney fees and we cannot say that the fact that the trial court awarded attorney fees under these circumstances constitutes an abuse of discretion.

*Id.* at ¶ 22, 170 P.3d at 544.

¶ 19 Similarly, in *Hester v. Hester,* 1983 OK 50, 663 P.2d 727, the Court addressed a party's argument that the trial court erred by ordering each party to pay his/her own attorney's fees. The Court stated: "In this case there is no transcript of the proceedings

---

30. *See, e.g., Fulsom v. Fulsom,* 2003 OK 96, ¶ 1, 81 P.3d 652, 654 (" § 110(D) only gives a trial court discretionary equitable authority to award attorney fees *for or against the two original par-* ties to the divorce case, i.e., the divorced spouses, based on a judicial balancing of the equities between those two parties.") (emphasis added).

and, for that reason, we cannot determine if an abuse occurred. That part of the trial court's judgment is approved." *Id.* at ¶ 7, 663 P.2d at 729.

¶ 20 This Court has dealt in a similar manner with arguments on appeal regarding an award of attorney's fees where no transcript of the hearing was provided for review. In *Stroud National Bank v. Owens,* 2006 OK CIV APP 37, 134 P.3d 870, this Court stated:

"It is the duty of the appealing party to procure a record that is sufficient to obtain the corrective relief sought." *Chamberlin v. Chamberlin,* 1986 OK 30, ¶ 7, 720 P.2d 721, 724. "Legal error may not be presumed in an appellate court from a silent record. The opposite is true. Absent a record showing otherwise, this court presumes that the trial court did not err." *Hamid v. Sew Original,* 1982 OK 46, ¶ 6, 645 P.2d 496, 497. Because no transcript of the attorney fee hearing appears in the instant record, we must presume the trial court's judgment was based upon sufficient evidence. [The appellant] has failed to demonstrate the trial court abused its discretion. On the basis of the foregoing, the judgments of the trial court entered against [the appellant] are affirmed.

*Id.* at ¶ 32, 134 P.3d at 879. *See also Galarza v. Galarza,* 2010 OK CIV APP 19, ¶ 11, 231 P.3d 694, 697–698.

¶ 21 Statutory exceptions to the American Rule exist that could have been relied upon by the trial court. They include 43 O.S. Supp.2009 §§ 112(D)(2), 111.1(C)(3), and 43 O.S.2001 § 111.3(E).

[12] ¶ 22 Section 112 is entitled "Care, Custody, and Support of Minor Children." Section 112(D)(2) provides that "[f]or any action brought pursuant to the provisions of this section which the court determines to be contrary to the best interest of the child, the prevailing party shall be entitled to recover ... attorney fees...." Although this provision and the following provision, § 111.1(C)(3), require the recipient of attorney's fees to be the "prevailing party," this is a legal term of art describing the successful party who has been awarded some relief on the merits of his or her claim. *Sooner Builders & Investments, Inc. v. Nolan Hatcher Construction Services, L.L.C.,* 2007 OK 50, ¶ 17, 164 P.3d 1063, 1069. The definition of a prevailing party is not confined to one who obtains judgment after a trial on the merits. *Professional Credit Collections, Inc. v. Smith,* 1997 OK 19, ¶ 12, 933 P.2d 307, 311. Further, it is not necessary that a party obtain all of the relief requested in order to be the prevailing party. *Commercial Communications, Inc. v. State of Oklahoma ex rel. Oklahoma Board of Public Affairs,* 1980 OK 93, ¶ 8, 613 P.2d 473, 476. The trial court may have implicitly found, e.g., that Mother was the prevailing party in this action because she was awarded physical custody of Child pursuant to her request in her November 8, 2002, Petition and, despite Father's motions to modify, she prevailed in maintaining that custody in subsequent proceedings.

¶ 23 Section 111.1 is entitled "Order to Provide Minimum Visitation for Noncustodial Parent—Violation of Order." Section 111.1(C)(3) provides that "[u]nless good cause is shown for the noncompliance, the prevailing party shall be entitled to recover ... attorney fees expended in enforcing the order...." The trial court may have implicitly found that Mother was the prevailing party regarding Father's December 7, 2007, application for contempt citation that was ultimately "dismissed by agreement" in an order filed on May 21, 2009.[31]

¶ 24 Section 111.3(E) provides that "[i]f the court finds that the motion for enforcement of visitation rights has been unreasonably filed or pursued by the noncustodial parent, the court may assess reasonable attorney fees ... against the noncustodial parent." The trial court may have implicitly found, e.g., that Father's September 15, 2006, application for contempt citation and/or his December 7, 2007, application for contempt citation were unreasonably filed or pursued.

¶ 25 Because we find that one or more statutory provisions exist in support of the trial court's journal entry awarding attorney's fees to Mother, the award of attorney's fees is not based on an erroneous legal con-

---

**31.** R., p. 324.

clusion. Furthermore, because we do not have a transcript of the hearing on attorney's fees, we cannot find that there is no rational basis in the evidence for the decision; instead, we presume that the journal entry is responsive to the evidence adduced. Therefore, we find that the trial court did not abuse its discretion.

## CONCLUSION

¶ 26 Father admits that the reasonableness of the amount of attorney's fees is not at issue because the parties stipulated to the reasonableness of the hourly rate and total fees submitted by Mother's counsel. However, Father argues that Mother is not entitled to an award of attorney's fees. We disagree because (1) the record on appeal does not contain a transcript of the hearing on the motion for attorney's fees, (2) one or more statutory provisions support the trial court's award of attorney's fees, and (3) the trial judge is presumed to be aware of these statutory provisions and its determination is presumed to be correct absent a record showing otherwise. Therefore, we find that the trial court did not abuse its discretion by awarding attorney's fees based on an erroneous legal conclusion or in the absence of a rational basis in the evidence for the decision. We affirm the trial court's journal entry filed on September 8, 2009.

¶ 27 **AFFIRMED.**

FISCHER, V.C.J., and WISEMAN, J., concur.