2018 OK CIV APP 3

**Lacee Dawn JONES, Petitioner/Appellee,**

**v.**

**Jody Robert PACK,**
**Respondent/Appellant.**

**Case Number: 115433**

Court of Civil Appeals of Oklahoma,
Division No. 4.

Decided: 12/04/2017

Mandate Issued: 01/03/2018

Bobby C. Ramsey, DAVIS & THOMP-SON, PLLC, Jay, Oklahoma, for Petitioner/Appellee.

Winston H. Connor, II, Joshua W. Brewer, STOCKWELL & CONNOR, P.L.L.C., Jay, Oklahoma, for Respondent/Appellant.

JANE P. WISEMAN, JUDGE:

¶1 We address Jody Robert Pack's appeal of a trial court order awarding attorney fees to Lacee Dawn Jones to determine whether the trial court erred in making the award. After review, we conclude the trial court erred in making the award and reverse its order.

## BACKGROUND

¶2 Department of Human Services, Child Support Services (CSS), filed a "Petition/Notice of Paternity and Support Obligations" on

June 14, 2010, alleging Jody Robert Pack is the father of JCA, born in August 2007. An agreed order was filed on October 1, 2010, finding he is the father of JCA based on genetic testing, setting monthly child support in the amount of $222.50, and ordering Father to pay $5,348 for reimbursement of child support expenses prior to the entry of the order. There was no provision for visitation in the agreed order.

¶3 On January 3, 2014, a "Notice to Review and Modify Support Order" was filed by CSS due to "[a] change in income of one or both parties." An order modifying Father's child support obligation was filed on April 1, 2014, to increase Father's monthly child support obligation to $311.11. Again, no provision was made for visitation.

¶4 On May 5, 2016, Father filed a "Petition to Establish Visitation and Application for Temporary Order." Father alleged Mother Lacee Dawn Jones had custody of JCA pursuant to the Oklahoma Uniform Parentage Act "until determined otherwise by the Court." Father further alleged Oklahoma has jurisdiction to hear the petition because it is the home state of JCA pursuant to the Oklahoma Uniform Child Custody Jurisdiction and Enforcement Act, Uniform Interstate Family Support Act, and the federal Parental Kidnapping Prevention Act. Father stated that to his "best knowledge and information," JCA has lived with Mother and/or Father for the past five years in Delaware County, Oklahoma.

¶5 Mother filed a "Special Appearance to Object to Jurisdiction" and "Motion to Dismiss or Transfer" in which she stated that she and JCA have lived in Rogers, Benton County, Arkansas, for approximately a year and a half, and in Springdale, Washington County, Arkansas, for two and a half years. She alleged, "The only contact the minor child has with the State of Oklahoma is through child support enforcement and [Father] lives in Delaware County, Oklahoma." Mother asked the trial court to dismiss Father's petition for lack of jurisdiction.

¶6 The trial court held a jurisdictional hearing on June 7, 2016, and granted Mother's request to dismiss due to lack of jurisdiction.

¶7 On June 27, 2016, Mother filed an application for attorney fees and costs, seeking $2,175 in attorney fees and $20 in costs. Mother included attorney time records in support of her application.

¶8 At the hearing on Mother's motion, she testified she makes $20 an hour and works thirty-three to thirty-five hours a week. Father's attorney told the court he was not contesting Mother's counsel's hourly rate of $250 or the hours he billed. Mother testified she is currently pregnant, she has paid in full the bill she received from her attorney, and she would like the court to award her attorney fees for the time spent on the motion to modify. Mother testified she has $4,000 in a joint savings account with her husband and $400 or $500 in a checking account. Mother stated that she and her husband can pay their monthly bills because they live within their means.

¶9 Father testified he was unemployed and had been unemployed for two and a half months due to a layoff for lack of work. He testified that he has been looking for work and that he does not have $4,000 or $5,000 in a checking or savings account. He testified that he has no other money than what is "needed to eat and keep a roof over [his] head and gas in [his] car."

¶10 On cross-examination, he testified the contact he has had with JCA has been through some phone conversations and Skype messages in April 2016. He stated that he receives $259 a week in unemployment compensation. His wife works and contributes to the household. His mortgage payment is $270 a month and his monthly utility bills total about $350. He has credit card payments of $90 a month, a car payment of $426 a month, and a motorcycle payment of $400 a month. He paid his attorney $4,000 from his savings account and now has no money left in the account. He admitted he knew Mother left Oklahoma when JCA was a year-old.

¶11 The trial court found Mother filed a petition for custody of JCA in September 2008 claiming Oklahoma was JCA's home state. She left Oklahoma shortly thereafter and neither she nor JCA has lived in Oklahoma since then. Mother never dismissed the

petition, but she "struck the matter from the Court's domestic docket on March 19, 2009 and there have been no pleadings filed in the matter since." After the State of Oklahoma filed an action to establish paternity, the court in October 2010 entered an agreed order finding Father to be JCA's father and setting child support but not addressing custody or visitation. Father filed a "petition" in the child support action in May 2016 to establish visitation. The order provides:

> In a hearing on June 7, 2016, the Court found under 43 O.S. § 551-202 that since Oklahoma had never made a child custody decision and that the child had not resided in the State of Oklahoma since 2008, Oklahoma lacked jurisdiction and only Arkansas (where the mother and child had resided for approximately 5 years) has jurisdiction to hear [Father's] petition for visitation. The Court also determined even if it had jurisdiction, Arkansas was a more convenient forum.

¶12 Mother argued that she was entitled to attorney fees in part because Father's petition "should have been filed in Arkansas and resulted in her incurring unnecessary expenditures of attorney fees to get the matter dismissed." Father countered that Oklahoma did have jurisdiction because Mother's 2008 custody action had never been dismissed. The trial court rejected this argument finding "that the 'date of commencement of the proceeding (See 43 O.S. § 551-201), is May 5, 2016, the date [Father] filed his Petition for Visitation." It further found that although Father was unemployed at the time of the hearing "he also acknowledged that he had been employed for most of the several preceding years with wages in the $12-$13/hr. range." Based on these findings, the trial court granted Mother's request for attorney fees and ordered Father to pay Mother $2,195 in monthly payments of $182.92 from September 2016 through September 2017.

¶13 Father appeals this attorney fee award.

### STANDARD OF REVIEW

■ ¶14 Father does not challenge the amount or reasonableness of the award but argues instead that Mother was not entitled to attorney fees. "This issue presents a question of law which we review *de novo*." *Finnell v. Seismic*, 2003 OK 35, ¶ 7, 67 P.3d 339; *see also Hollingshead v. Elias*, 2016 OK CIV APP 46, ¶ 12, 376 P.3d 936 ("The question of a party's entitlement to attorney fees is … a question of law, which we review *de novo*."). "The court has plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings." *Finnell*, 2003 OK 35, ¶ 7, 67 P.3d 339.

### ANALYSIS

■ ¶15 The rule that "'each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties'" is "'firmly established in this jurisdiction.'" *Boatman v. Boatman*, 2017 OK 27, ¶ 16, 404 P.3d 822 (quoting *Eagle Bluff, L.L.C. v. Taylor*, 2010 OK 47, ¶ 16, 237 P.3d 173). The trial court in the present order does not state the legal basis for its fee award. After review, we find no authority directly supporting the award of attorney fees.

■ ¶16 In her motion to dismiss, Mother argued that "Oklahoma has no significant contacts with" JCA and all significant contacts pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) are in Arkansas. The trial court dismissed Father's petition for lack of jurisdiction. The UCCJEA, found at 43 O.S.2011 §§ 551-101 through 551-402, contains two statutes allowing the award of attorney fees. Title 43 O.S.2011 § 551-208 states:

> A. Except as otherwise provided in Section 16 of this act or by another law of this state, *if a court of this state has jurisdiction under this act because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct*, the court shall decline to exercise its jurisdiction unless:
> 1. The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
> 2. A court of the state otherwise having jurisdiction under Sections 13 through 15 of this act determines that this state is a

more appropriate forum under Section 19 of this act; or

3. No court of any other state would have jurisdiction under the criteria specified in Sections 13 through 15 of this act.

B. If a court of this state declines to exercise its jurisdiction pursuant to subsection A of this section, it may fashion an appropriate remedy to ensure the safety of the child and prevent a repetition of the unjustifiable conduct, including staying the proceeding until a child custody proceeding is commenced in a court having jurisdiction under Sections 13 through 15 of this act.

C. *If a court dismisses a petition or stays a proceeding because it declines to exercise its jurisdiction pursuant to subsection A of this section, it shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney fees,* investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate. The court may not assess fees, costs, or expenses against this state unless authorized by law other than this act.

(Footnotes omitted.) The trial court did not dismiss the petition because Father had engaged in unjustifiable conduct, nor is such a finding in the record.[1] Simply filing the petition to establish visitation in the pre-existing paternity/child support case does not constitute unjustifiable conduct.

¶17 The second statute allowing an award of attorney fees pursuant to the UCCJEA is 43 O.S.2011 § 551-312, found in the section of the Act addressing enforcement, and provides:

A. The court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of

the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

The UCCJEA provides that an Oklahoma court must "recognize and enforce a child custody determination of a court of another state" where the court making the determination "exercised jurisdiction in substantial conformity with this act or the determination was made under factual circumstances meeting the jurisdictional standards of this act and the determination has not been modified in accordance with this act." 43 O.S.2011 § 551-303(A) (footnote omitted). No custody determination in another state was made that an Oklahoma court was required to recognize or enforce, and 43 O.S.2011 § 551-312's provision governing attorney fees is not applicable here.

¶18 The original filings in the case were brought to establish paternity—the Uniform Parentage Act, 10 O.S.2011 & Supp. 2016 §§ 7700-101 through 7800. Section 7800 provides, "Except as otherwise provided by law, the mother of a child born out of wedlock has custody of the child until determined otherwise by a court of competent jurisdiction." 10 O.S.2011 § 7800. No court has determined that Mother does not have custody of JCA.

¶19 This Court has previously concluded that 43 O.S. § 110, the statute allowing attorney fees in dissolution of marriage cases, did not apply when the parents were never married. *See McKiddy v. Alarkon*, 2011 OK CIV APP 63, ¶ 15, 254 P.3d 141. Without some custody determination by a court, we conclude the Uniform Parentage Act also does not provide grounds for attorney fees in this case. Title 43 O.S. Supp. 2016 § 109.2 states:

A. Except as otherwise provided by Section 7700-607 of Title 10 of the Oklahoma Statutes, in any action concerning the custody of a minor unmarried child or the determination of child support, the court may determine if the parties to the action are the parents of the children. In a pater-

---

1. Despite Mother's characterization of Father's conduct in her application for attorney fees as "capricious indifference to the welfare of the

parties' child" causing this litigation, Father's quest to establish visitation seems both normal and appropriate.

nity action, prior to genetic testing to establish paternity pursuant to the Uniform Parentage Act, the court may award custody to the presumed father if it would be in the best interests of the child. As used in this subsection, "presumed father" means a man who, by operation of law under Section 7700-204 of Title 10 of the Oklahoma Statutes, is recognized as the father of a child until that status is rebutted or confirmed in a judicial proceeding.

B. If the parties to the action are the parents of the children, the court may determine which party should have custody of said children, may award child support to the parent to whom it awards custody, and may make an appropriate order for payment of costs and attorney fees.

(Footnote omitted.) In consideration of Father's petition to establish visitation, the trial court did not make any decisions as to JCA's custody or child support because it found it had no jurisdiction. And, the trial court determined that Father initiated the proceedings here on May 5, 2016. An attorney fee award would be improper under § 109.2 because no custody or child support decisions were made as a result of Father's petition to establish visitation.

¶20 Title 10 O.S.2011 § 7700-636 provides that in a proceeding to adjudicate whether a man is the parent of a child, pursuant to the Uniform Parentage Act, "the court may assess filing fees, reasonable attorney fees, fees for genetic testing, other costs, and necessary travel and other reasonable expenses incurred in a proceeding under this Article." But the trial court was not then determining paternity (previously adjudicated), but was considering only Father's request for visitation. The fees incurred by Mother were not incurred to determine parentage and § 7700-636 does not apply.

¶21 In *Briggeman v. Hargrove*, 2014 OK CIV APP 13, 318 P.3d 1130, the mother filed an application for attorney fees citing 10 O.S.2011 § 7700-636 as the basis for the award. *Id.* ¶ 3. The father filed an application for emergency custody in Oklahoma while he

was exercising visitation with the parties' minor child and refused to return the child to Ohio where the mother lived. *Id.* ¶ 2. The mother objected to the Tulsa County District Court's assumption of jurisdiction and asked the Oklahoma Supreme Court to assume jurisdiction after "[t]he emergency show cause hearing [was] continued over a period of many months without resolution." *Id.* The Supreme Court concluded the Tulsa County District Court did not have jurisdiction and ordered the child returned to the mother. *Id.* The Court found that the father " 'came forward with no evidence to substantiate his claim of emergency, and at the most raised a question as to the relative merit of either himself or [the mother] as the primary custodial parent.' " *Id.* The Court concluded that the matter should be litigated before " 'the home county and state of the child.' " *Id.*

¶22 The father filed a motion to dismiss mother's application for attorney fees, costs, and expenses. *Id.* ¶ 4. The trial court held that it lacked jurisdiction and granted father's motion to dismiss. *Id.* On appeal, this Court held that "notwithstanding the entry of the writ of prohibition, the trial court had the inherent equitable supervisory power to assess [the father] and award [the mother] attorney fees in the event it finds [the father's] conduct was oppressive or abusive." *Id.* ¶ 6.

¶23 Examining this case in the light of *Briggeman*, we see no indication that Father's conduct was oppressive or abusive.[2] The trial court determined it lacked jurisdiction after Father filed a petition for visitation. The "inherent equitable supervisory power to assess" attorney fees against Father is not implicated under these facts. And, even delving into the equitable considerations of this case, we could not require Father to pay Mother's attorney fees and costs when he was unemployed at the time of the fee hearing. Further, the travel distance between Rogers, Arkansas, and Jay, Oklahoma, is not so burdensome as to tip the equitable considerations in Mother's favor or to make Father's filing in Delaware County oppressive or abusive.

**2.** See n. 1 above.

## CONCLUSION

¶24 Finding no basis to invoke the "inherent equitable supervisory power" to award fees and no statutory basis for the fee award, we reverse the decision of the trial court.

¶25 **REVERSED.**

THORNBRUGH, V.C.J., and BARNES, P.J., concur.