WELLS FARGO BANK v. LAM



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WELLS FARGO BANK v. LAM

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WELLS FARGO BANK v. LAM
2019 OK CIV APP 9
435 P.3d 131
Case Number: 116440
Decided: 12/07/2018
Mandate Issued: 02/13/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 9, 435 P.3d 131

 

WELLS FARGO BANK, N.A., Plaintiff,
v.
PHONG LAM, Defendant/Appellee,
and
THANT T. PHAM; TINKER FEDERAL CREDIT UNION; HSBC BANK NEVADA, N.A.; CAPITAL ONE, N.A.; CAPITAL ONE BANK, (USA), N.A.; OCCUPANT 1 (Real Name Unknown); OCCUPANT 2 (Real Name Unknown), Defendants,
and
STATE OF OKLAHOMA ex rel. OKLAHOMA TAX COMMISSION, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

AFFIRMED

Rex D. Brooks, Oklahoma City, Oklahoma, for Defendant/Appellee

Lee Pugh, GENERAL COUNSEL, Marjorie Welch, FIRST DEPUTY GENERAL COUNSEL, Mary Ann Roberts, ASSISTANT GENERAL COUNSEL, OKLAHOMA TAX COMMISSION, Oklahoma City, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Defendant/Appellant State of Oklahoma ex rel. Oklahoma Tax Commission (the OTC) appeals from an order of the district court granting the motion of Defendant/Appellee Phong Lam (Lam) for sanctions against the OTC and awarding Lam's counsel "$2500.00 in attorneys fees and costs for the expenses and time expended in" seeking removal of a purported tax lien on Lam's property. We affirm.

BACKGROUND

¶2 On February 9, 2016, Plaintiff Wells Fargo Bank, N.A. filed a foreclosure petition in which it alleged Lam was in default on a purchase promissory note he executed on May 1, 2012, and alleged it was entitled to foreclose the mortgage securing payment of that note on certain real estate located in the Rock Knoll addition in Oklahoma County, Oklahoma (the subject property). Wells Fargo also alleged various entities, including the OTC, were made defendants in the foreclosure action because they may be claiming some interest in the subject property. Wells Fargo alleged: "[T]here appears of record in the office of the County Clerk of OKLAHOMA County, Oklahoma, a Tax Warrant No. ITI2011160629-00, entitled State of Oklahoma ex rel., Oklahoma Tax Commission vs. Phong Lam, in the amount of $60,196.88, filed May 20, 2011, in Book 11637, Page 22." It alleged that the OTC along with other named defendants "may be claiming some right, title, lien, estate, encumbrance, claim, assessment or interest in or to [the subject property]" that is adverse to and constitutes a cloud on Wells Fargo's title but that any such lien or interests are "subsequent, junior and inferior to the first mortgage lien" held by Wells Fargo.

¶3 The OTC filed its answer on March 14, 2016, in which it "admit[ted] an interest in the property pursuant to 68 O.S. § 231 and § 234, in the amount shown in the attached exhibit(s), together with interest and penalty according to law." The answer states, "[The OTC] prays that its tax warrants and or certificates of indebtedness be declared liens on the [subject] property described in [Wells Fargo's] Petition, and that its liens be prioritized and satisfied from the sale proceeds." The OTC requested the relief described in its answer.

¶4 Attached to the answer was a Tax Warrant numbered ITI2011160629-00, filed May 20, 2011, in Book #11637, Page #22, in Oklahoma County. The name of the taxpayer on the warrant was Phong Lam, and stated his address at Whispering Oak Road in Oklahoma City and his tax identification number as XXXXX0722S. The warrant stated the amount due at that time including penalty and interest was $60,196.88, and directed that it be filed in the same manner as a judgment.

¶5 Lam also filed an answer in March 2016, specifically denying, among other things, the allegations that the OTC and other named defendants had an interest in the subject property.

¶6 On March 18, 2016, Lam's attorney notified the OTC that the Phong Lam named in its tax warrant is not Lam, provided the OTC with Lam's full social security number, stated Lam "has been mistaken for the Phong Lam who has tax warrants on other occasions," and stated Lam has been successful in showing he is not the same Phong Lam listed on the tax warrants. Lam asked the OTC to "please withdraw [its] answer filed in [the foreclosure action] in which [it] claim[s] an interest in the real property which is the subject of the above referenced foreclosure action." The record shows no response by the OTC to Lam's request.

¶7 Four months later, on July 26, 2016, Lam's attorney sent the OTC another letter in which he enclosed a motion for sanctions against the OTC pursuant to 12 O.S. Supp. 2014 § 2011(B)(2)(3) & (C). Lam's attorney informed the OTC he would not file the motion for twenty-one days "to give [the OTC] a chance to dismiss [its] claim for a Tax Warrant Lien on [the subject property] in [the foreclosure action] on the basis of Tax Warrant # ITI2011160629-00 against a Phong Lam with the last four digits social security number of 0722," which are not the last four digits of Lam's social security number as previously provided to the OTC in the March 2016 correspondence.

¶8 An email dated July 29, 2016, from the attorney for the OTC to the attorney for Wells Fargo and which was copied to Lam's attorney stated, as follows:

I have attached correspondence from [Lam's attorney] which I received in regard to the [foreclosure] case. I wanted to make you aware of [Lam's attorney's] dispute as to whether you have named the OTC as a defendant in error. His letter is somewhat barking up the wrong tree as the OTC has no way of knowing who the mortgagee is or if the Phong Lam against whom the OTC has a lien is the same person as the mortgagee at issue. The OTC was named in this suit as a defendant with a tax warrant listed as required by 68 O.S. § 234. If the OTC has been improperly named, we would appreciate being dismissed from the suit.

The OTC did not, however, withdraw its answer.

¶9 On February 27, 2017, Lam filed a motion for sanctions against the OTC pursuant to 12 O.S. § 2011(B)(2)(3) & (C) and § 2011.1 "for filing a frivolous pleading by claiming frivolously that it has a Tax Warrant Lien against [Lam's] property." He asked that he be awarded attorney fees in the amount of $2,500 as a sanction against the OTC. On March 1, 2017, the OTC filed a "Withdrawal of Answer and Issuance of Disclaimer State of Oklahoma, ex rel. Oklahoma Tax Commission" in which it "disclaims its lien no. ITI2011160629-00 as it relates to the specific real estate involved in this action." It requested that it be "discharged with its costs."

¶10 A hearing on Lam's motion was held May 18, 2017.[1] In subsequent briefing ordered by the court, the OTC argued, among other matters, that its answer was not filed in violation of § 2011(B)(2) & (3) because the "OTC liens are issued in the form of a tax warrant against an individual taxpayer in the county of the last known address of the taxpayer," pursuant to 68 O.S. 2011 §§ 230 & 231. The "liens do not contain a legal description or address of a specific property, but attach to any property owned by the named taxpayer in that county." Because Lam's name is the same as the name on the tax warrant, the OTC argued that at the time it filed its answer, it "had no reason to believe that tax warrant ITI2011160629-00 was included incorrectly in the foreclosure." It argued its legal basis for filing an answer in the foreclosure proceeding is found in 68 O.S. 2011 §§ 231 & 234,[2] and there was evidentiary support for its answer because the main defendant in the foreclosure proceeding had the same name as the name on the tax warrant.

¶11 The OTC also argued that its action in filing its answer was not unreasonable because Wells Fargo asserted in its petition that the OTC may have an interest in the subject property and Wells Fargo had access to all relevant information including Lam's social security number and "chose to name the OTC" as a defendant. It argued, "The Answer of the OTC was filed in part based on the Petition of the Plaintiff, which was filed with this Court and which Defendant Phong Lam has not alleged to have been filed frivolously." This reliance on Wells Fargo's allegations and the OTC's limited resources, the OTC argued, show its actions were not in bad faith or without reason and, therefore, it should not be sanctioned.

¶12 In its order, the trial court found that after the OTC filed its answer, it was notified that the tax warrant "was on the wrong property and against the wrong person." Several months after that notice was given, the OTC was again asked to remove the lien from Lam's property and was given the statutory twenty-one days to remove the lien before sanctions would be filed. The trial court further found that two days after the sanctions motion was filed, the OTC "filed a disclaimer of the lien, but only removed it with relation to the [subject property], almost a year from the date the error was brought to [the OTC's] attention, and nine months after the proposed Motion for Sanctions was sent by counsel for [Lam]."

¶13 The trial court further found that while "the initial filing of the Tax Lien was in error, sometimes mistakes are made. What is baffling to the Court (and to which no reasonable explanation has been presented) is the extended delay in rectifying the mistake, which had and continues to have serious consequences for [Lam]." Referencing State ex rel. Department of Human Services v. Hunt, 1992 OK CIV APP 115, 838 P.2d 544, the court found there was no reasonable basis for OTC's failure to remove a significant tax lien from the subject property

and from the record of [Lam] for almost a year after [the OTC was] notified. In addition, the disclaimer filed in the case appears to still be valid against [Lam] in all respects, except for [the subject property]. There is no evidence that a Release of the Lien has ever been filed, or that the matter has been cleared up with respect to the lien's effect on other assets.

The court found the OTC's actions were unreasonable and without basis pursuant to 12 O.S. § 2011(B)(2) & (C). Based on the trial court's consideration and application of the factors in State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659, the court awarded Lam's counsel $2,500 in attorney fees and costs as a sanction against the OTC for the expenses and time expended in seeking to remove the lien.

STANDARD OF REVIEW

¶14 We review a sanction ruling for an abuse of discretion. To reverse for abuse of discretion, we must determine the trial court made a clearly erroneous conclusion and judgment, against reason and evidence. Although we examine and weigh any proof in the record, we abide the presumption that the lower court decision on the sanction question is legally correct and cannot be disturbed unless it is contrary to the weight of the evidence or to a governing principle of law.

Garnett v. Gov't Emps. Ins. Co., 2008 OK 43, ¶ 14, 186 P.3d 935 (footnotes omitted).

ANALYSIS

¶15 "The American Rule is firmly established in this jurisdiction" such that "each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties. Exceptions to the American Rule are narrowly defined." Eagle Bluff, L.L.C. v. Taylor, 2010 OK 47, ¶ 16, 237 P.3d 173 (quoting Kay v. Venezuelan Sun Oil Co., 1991 OK 16, ¶ 5, 806 P.2d 648). "Statutes authorizing the award of attorney's fees must be strictly construed, and exceptions to the American Rule are carved out with great caution" because liberality of attorney's fees awards" has a "chilling effect on open access to the courts." Eagle Bluff, ¶ 16 (citation omitted). Additionally, however, "trial courts have an inherent equitable power to award attorney's fees regardless of the fact that an award is not authorized by statute or contract, whenever overriding considerations, such as oppressive behavior on the part of a party, indicate the need for such a recovery." McKiddy v. Alarkon, 2011 OK CIV APP 63, ¶ 12 n.29, 254 P.3d 141 (citing Garnett, 2008 OK 43, ¶ 18). "[S]anctions assessed pursuant to a trial court's inherent, equitable powers are not to be awarded lightly or without fair notice and a hearing." McKiddy, ¶ 12 n.29 (citation omitted).

I. Court's Authority to Sanction for Violation of § 2011 

¶16 The trial court specifically found the OTC's attorney violated 12 O.S. § 2011(B)(2).[3] As explained by the Garnett Court, § 2011

provides a statutory basis for the award of sanctions under certain limited circumstances. Like its federal counterpart, Fed. R. Civ. P. 11, [§] 2011 requires an attorney make reasonable inquiry to assure all motions, pleadings and papers filed with a court have a factual basis, are legally tenable and are not submitted for an improper purpose. The purpose of § 2011 is to discourage presenting pleadings, written motions, or other papers to a court that are legally and/or factually frivolous, or presented for an improper purpose, such as delay. The central goal of § 2011 is to deter baseless filings. Sanctions exist to ensure the orderly and proper functioning of the legal system and serve the dual purposes of deterring and punishing offending conduct.

Garnett, ¶ 15 (footnotes omitted).[4] However, "[i]n order to levy sanctions, the trial court [is] required to follow the statutory procedure found in § 2011." Id. ¶ 17. In Garnett, the twenty-one day safe-harbor provision of § 2011(C)(a) was not followed; therefore, "the offending party [was not given the opportunity] to withdraw or appropriately correct the challenged paper[.]" Id. ¶ 16. Consequently, the Supreme Court concluded the trial court had no authority to impose sanctions pursuant to § 2011.

¶17 Unlike the circumstances in Garnett, in the present case the procedures required by § 2011(C)(a) were followed. Further, while the trial court found the OTC made a mistake in filing the answer, the record supports the determination that the mistake was a failure to comply with the reasonable inquiry requirements of § 2011(B)(2) that the OTC's tax warrant against Lam and his property were warranted under existing law.

¶18 The OTC argues it filed its answer in good faith because it relied on Wells Fargo's allegation in its petition that the OTC might have an interest in the subject property and Wells Fargo, not it, was in possession of the information upon which that allegation was made. The OTC does not, however, assert it made any inquiry regarding Wells Fargo's allegations; it merely relied on its adversary's allegations, even though the face of the tax warrant presented two pieces of information that should have at least raised a concern about whether Lam and his property were the proper subjects of the tax warrant. First, while the petition did not state an address for the subject property, it did state the addition in which the subject property was located. No argument was provided by the OTC about why it was unable to determine if the property address listed in the tax warrant was in the addition of the subject property although it argues the tax lien was against any property owned by the taxpayer in the county. Yet, it offers no reason why the address on the warrant was not used to help identify whether Lam was the same person named as the taxpayer. The effort may have yielded no information, but no effort was ever made to identify the taxpayer according to the address on the tax warrant before it filed its pleading asserting a lien on the proceeds from the sale of the subject property. Second, the tax warrant contained a social security number. No explanation was provided by the OTC about why it was unable to attempt to properly identify the taxpayer on its warrant and Lam; that is, before asserting a claim against Lam and the subject property, the OTC made no inquiry based on information it clearly had. The OTC offered no explanation -- except to assert the agency's limited resources -- why it would be unreasonable for it to have attempted to make these simple inquiries prior to filing its answer. The record supports the trial court's conclusion that Lam was not the taxpayer against whom the tax warrant was issued.

¶19 The OTC argues, however, that sanctions may be imposed against it only if the filing was frivolous as defined in § 2011(E).[5] However, § 2011(B) requires all of the following from an attorney who files a pleading with the court:

1. It is not being presented for any improper or frivolous purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

¶20 Only two of the above-referenced subsections contain the word frivolous or nonfrivolous -- (B)(1) and the second clause of (B)(2). Nothing in the present case indicates the OTC was advancing an "argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" In the present case, because the OTC failed to file its answer "after an inquiry reasonable under the circumstances" to determine that its tax warrant applied to Lam and the subject property, and it did not, its "claims . . . and other legal contentions therein [were not] warranted by existing law[.]" However, while the applicable clause of § 2011(B)(2) does not contain the word frivolous, it does require that the party or its attorney has an informed basis (upon reasonable inquiry) for a claim "warranted by existing law." Here the OTC's claim is unwarranted under existing law because Lam is not the taxpayer who is indebted to the State. It was the failure of the OTC to make any inquiry -- to make an effort to determine the pleading had a factual basis and, thus, that the pleading was factually and legally tenable -- that is evidence of bad faith.

¶21 The OTC maintained below and continues to maintain on appeal that only Wells Fargo could have corrected the harm to Lam and the cloud on the title to the subject property created by the OTC's answer. Wells Fargo, it asserts, could and should have dismissed the OTC from the lawsuit even though the OTC was fully informed that its tax warrant was not against Lam and that, therefore, it had no interest in the subject property. It continues to make this argument even though within days of the filing of Lam's motion for sanctions, the OTC withdrew its answer. The OTC offers no reason in law or fact why, then, it was precluded from doing so earlier in the litigation even though "the error was brought to [its] attention" nearly a year earlier and "nine months after the proposed Motion for Sanctions was sent by [Lam's] counsel[.]" The trial court stated: "What is baffling to the Court (and to which no reasonable explanation has been presented) is the extended delay in rectifying the mistake, which had and continues to have serious consequences for [Lam]." The court also found that while the OTC disclaimed the lien as to the subject property, it still has not released the lien against Lam.

¶22 We conclude the trial court did not abuse its discretion in determining that § 2011(B)(2) had been violated by the OTC and in imposing sanctions against the OTC pursuant to § 2011(C).[6]

II. Court's Inherent Equitable Power to Sanction

¶23 Even if 12 O.S. § 2011 does not provide a statutory basis for the sanction award, the "trial court has the inherent authority to sanction a party or an attorney for bad faith litigation misconduct," although that power is not to be exercised lightly "or without fair notice and a hearing." Garnett, ¶ 18 (footnotes omitted). "There must be a finding of bad faith or oppressive behavior where the trial court has imposed sanctions on the basis of its inherent or equitable power to do so." Walker v. Ferguson, 2004 OK 81, ¶ 14, 102 P.3d 144 (citation omitted). In Garnett, the Supreme Court concluded the trial court improperly exercised its inherent authority because the improper filing -- the disclosure of a settlement offer -- was not made before a jury or the district court judge before whom the underlying action was heard, but rather was offered in the sanctions motion. The Court reasoned the disclosure

could not possibly have affected the insurer's liability on the underlying claim. While [the trial judge] did conduct a hearing on the parties' motions for sanctions, the passenger was never given an opportunity to withdraw or amend his motion for sanctions. Imposition of sanctions under these circumstances was premature and excessive. Because the trial court had no authority to sanction the passenger's counsel under § 2011(C)(a) and an order of sanctions under the circumstances of the cause was an excessive extension of the trial court's inherent powers, the trial court abused its discretion by sanctioning the passenger's counsel.

Garnett, ¶ 19. See also McKiddy, 2011 OK CIV APP 63, ¶ 12 n.29 ("Because, among other things, 'fair notice and a hearing' regarding a party's request for attorney's fees pursuant to the trial court's 'inherent equitable power' are required, and because there is no indication of such 'fair notice and hearing' having occurred regarding Mother's request for attorney's fees upon this basis, we will not consider the trial court's inherent authority as a possible basis for the attorney's fees award in this case.") (citation omitted)).

¶24 Unlike the settlement document in Garnett, the trial court found the OTC's answer asserted a claim that "had and continues to have serious consequences for [Lam]."[7] Unlike the facts in both Garnett and McKiddy, the OTC had notice and an opportunity to withdraw the answer, but it was not until two days after the sanctions motion was filed that the OTC "filed a disclaimer of the lien, but only removed it with relation to the [subject property], almost a year from the date the error was brought to [the OTC's] attention, and nine months after the proposed Motion for Sanctions was sent by counsel for [Lam]." The trial court specifically found no reasonable explanation for that delay had been provided by the OTC and the extended delay "had and continues to have serious consequences for [Lam]."

¶25 Under the facts presented here, we conclude the trial court properly exercised its inherent authority to sanction the OTC for its dilatory actions that caused continuing harm to Lam.

CONCLUSION

¶26 We conclude the trial court did not abuse its discretion in awarding attorney fees to Lam's attorney as a sanction for the OTC's violation of 12 O.S. Supp. 2014 § 2011 and pursuant to its inherent authority to award sanctions. Accordingly, we affirm.

¶27 AFFIRMED.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] At the conclusion of the hearing, the trial court ordered the parties to brief the question of the court's power to impose sanctions against a state agency. Lam argued, among other things, that the court had power to sanction the OTC pursuant to 12 O.S. 2011 § 941. Lam argued that while the OTC did not initiate the foreclosure action, the OTC affirmatively asked the trial court to declare its tax warrant as a lien on Lam's property to be satisfied from the proceeds of the sale of the property. That action, he argued, "is an action brought by [the OTC]. That is all Section 941 requires." Among other arguments, the OTC argued its answer did not come within § 941 because it was filed in the foreclosure action initiated by Wells Fargo, facts distinguishable from those in the cases upon which Lam relied.

[2] Section 234(B) provides in part:

In any action affecting the title to real estate . . . , the State of Oklahoma may be made a party defendant, for the purpose of determining its lien upon the property involved therein only in cases where notice of the lien of the state has been filed and indexed as provided in Sections 230 and 231 of this title. In any such action, service of summons upon the Oklahoma Tax Commission, by serving any member thereof, shall be sufficient service and binding upon the State of Oklahoma. In all such actions or suits, the complaint or pleading shall include the name and address of the taxpayer whose liability created the lien and the identifying number evidencing the lien.

[3] The pertinent part of that subsection of § 2011 provides as follows:

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . . .

2. The claims, defenses and other legal contentions therein are warranted by existing law . . . [.]

(Emphasis added.)

[4] The standard under Rule 11 of the Federal Rules of Civil Procedure is an objective one. For example, as discussed in Robinson-Reeder v. American Council on Education, 626 F. SupP.2d 11 (D.D.C. 2009):

As this Court has previously noted, "Rule 11 sanctions protect the court from frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." "The test [for sanctions] under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim. The Court must also take into consideration that Rule 11 sanctions are a harsh punishment, and what effect, if any, the alleged violations may have had on judicial proceedings."

626 F. SupP.2d at 18 (citations omitted).

[5] Subsection 2011(E) provides: "DEFINITION. As used in this section, 'frivolous' means the action or pleading was knowingly asserted in bad faith or without any rational argument based in law or facts to support the position of the litigant or to change existing law."

[6] The OTC argues the trial court must have imposed sanctions against it pursuant to 12 O.S. 2011 § 941 because in its order the trial court cited State ex rel. Department of Human Services v. Hunt, 1992 OK CIV APP 115, 838 P.2d 544, a decision wherein the statutory basis for the fee award was § 941. However, the trial court's order only cited Hunt for the proposition that an award of attorney fees is appropriate if there is a "reasonable basis" for such an award. The order then set forth why such a reasonable basis was present in this case and justified an award pursuant to § 2011. Consequently, we disagree with the OTC that § 941 was the basis for the court's award.

[7] No transcript of the oral argument regarding the sanctions motion was a filed nor was a narrative statement provided. Okla. Sup. Ct. R. 1.30, 12 O.S. 2011, ch. 15, app. 1. In this regard it bears noting that the burden to provide a record demonstrating alleged error falls directly and solely on the appellant. Hamid v. Sew Original, 1982 OK 46, 645 P.2d 496. This Court will presume the district court's decision on the sanction question is legally correct unless the record demonstrates otherwise. State ex rel. Tal v. City of Okla. City, 2002 OK 97, ¶ 3, 61 P.3d 234.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 115, 838 P.2d 544, 63 OBJ 3239, State ex rel. Dept. of Human Services, Child Support Enforcement Unit v. Hunt
Discussed at Length
 2011 OK CIV APP 63, 254 P.3d 141, MCKIDDY v. ALARKON
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 16, 806 P.2d 648, 62 OBJ 785, Kay v. Venezuelan Sun Oil Co.
Discussed
 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2004 OK 81, 102 P.3d 144, WALKER v. FERGUSON
Discussed
 2008 OK 43, 186 P.3d 935, GARNETT v. GOVERNMENT EMPLOYEES INSURANCE COMPANY
Discussed at Length
 2010 OK 47, 237 P.3d 173, EAGLE BLUFF, L.L.C. v. TAYLOR
Discussed
 1979 OK 115, 598 P.2d 659, STATE EX REL. BURK v. CITY OF OKLAHOMA CITY
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2011, Signing of Pleadings
Discussed at Length
 12 O.S. 941, Actions by State Agencies - Attorney Fees
Discussed
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 230, Certificate of Indebtedness to State - Recording and Indexing - Lien Status
Cited
 68 O.S. 231, Tax Warrants
Cited
 68 O.S. 234, Lien for Unpaid Taxes, Interest, and Penalties
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA